Taylor v. Wait.

---

### GERSHOM TAYLOR, Admr., and Another v. BARNET S. WAIT.*

#### Official Sales.    Secret Trust in Behalf of Debtor.

In trespass and trover for property taken in attachment by defendant as property of G., it appeared that the property was the proceeds of property that had before then been sold on executions at suit of other creditors, but allowed to remain in G's possession after the sale. The court directed a verdict for defendant on the ground that there was an agreement that the title conveyed by the sale should be defeasible. *Held*, that on the evidence, *q. v.*, the question as to G's equitable ownership should have been submitted to the jury.

In the absence of proof to the contrary an officer's proceedings by way of sale on execution, are presumed to be regular.

TRESPASS, with a count in trover, for four horses and a quantity of lumber and chair posts. Pleas, general issue, and justification

under process.   Trial by jury, September Term, 1878, Ross, J., presiding.

The plaintiffs introduced in evidence a writ against Austin P. Graham at suit of the West River Bank, with record of judgment by confession thereon for $8,200, execution thereon for the same amount, and note also for the same amount from Graham to the bank ; writ against the same at suit of Seth Taylor, Jr., with record of judgment by confession for $4,619.61 damages, and $3.42 costs, execution thereon, Graham's notes payable to Taylor, one for $3,500 and one for $1,060, and a memorandum of $59.61 ; and a deed of warranty from Graham to said Taylor and Billings Taylor.   Those papers,—writs, judgments, executions, &c.,—all bore date December 17, 1861, except the memorandum, which bore date the 12th.   The plaintiffs introduced witnesses whose testimony tended to prove that on the morning of the day of the date of those papers, Graham, who was the owner of considerable real estate consisting of mill property, houses, and woodland, and of personal property consisting of horses, oxen, wagons, sleds, harnesses, lumber, logs, and chair-stock, but who was indebted to parties in the west, and indebted to the bank on a promissory note for $5,500, of which he was the maker, which was about to mature, and also liable on other notes of which he was an indorser to the amount with interest of about $2,700, went to the bank to see Butler, the cashier, in regard thereto ;   that Butler then said the bank must be secured, and sent for the Taylors, who had assumed a contingent liability for Graham amounting to about $3,500; and to whom he was indebted in the further sum of about $1,100, and in the evening, when the Taylors came, they with Butler and Graham went to the office of Butler & Wheeler, attorneys, who had before then acted professionally for both the bank and Graham, to consider the matter ; that Graham there gave an account of his property, and Butler not being satisfied to let the matter remain as it was, action was brought at his request in behalf of the bank, and an action in behalf of the Taylors at their request, and executions issued thereon, &c., as per papers already referred to ;   that Graham wished to continue his business, and they all wanted he should, so it was agreed on Graham's request

69

that when the property came to be sold the Taylors should bid off the property, if it went low, the Taylors consenting so to do, and let him have it to go on in business with, he managing it as his own, exchanging and buying out of the proceeds of it when necessary, &c., but keeping it good as nearly as he could, and keeping it for the Taylors, but with the understanding that it should finally be his if he paid the debts; that he was to pay the debts as fast as he could, paying the bank first and the Taylors afterward, and that the Taylors were not to be liable for anything he might do; that deeds conveying all of Graham's real estate to the Taylors were then drawn and executed, and that the executions were delivered to the sheriff that night. The testimony of those witnesses also tended to prove that the executions were afterwards levied on all of Graham's personal property, and the property sold at auction in January following, for about $2,500, and bid off by the Taylors and retained and used by Graham, pursuant to said arrangement; that the Taylors never paid their bids, but that the bank took an obligation of them for the amount of its debt, the greater part of which Graham afterwards paid; that Graham continued in possession of the property, managing it substantially as his own, manufacturing lumber and chair-stock, and buying and selling until this action was brought, in June, 1876,; that the Taylors died in 1868 and 1869, Graham still owing them about $5,000, which was not paid at the time of trial; that Graham was one of the commissioners and appraisers on the Taylor estates, and in that capacity inventoried the property of the estates, but inventoried as such none of the property in question, although the Taylors' widows knew they owned the property, and talked about it, but never asked Graham to give it up; that at different times after the arrangement of December 17, the property was attached by various creditors as Graham's property, and that Graham settled with them without disclosing the state of the title; that the property taken by the defendant was all property that Graham had obtained from the business under the arrangement with the Taylors, but none of it the identical property that was bid off by the Taylors and returned to the possession of Graham.

It was conceded that the defendant took the property in question as the property of Graham.

On the foregoing testimony the court directed a verdict for the defendant. Exceptions by the plaintiffs.

*E. L. Waterman*, for the plaintiffs.

The court in taking the case from the jury went beyond any decided case. In *Webster* v. *Denison*, 25 Vt. 493, there was an absolute agreement to buy the property which was an inducement to the confession of judgment, yet it was left to the jury to find whether there was any secret trust. Here the suits were brought of the bank's motion, not of Graham's.

But the Taylors did not stand in the relation of creditors to the bank's execution, which the property did not bring enough to satisfy. The bank made no agreement to buy. This carries the case outside of the principle contended for by the defendant. *Webster* v. *Denison, supra.* There can be no secret trust except between the parties to the execution on which the property is sold. *Batchelder* v. *Carter*, 2 Vt. 168 ; *Austin* v. *Soule*, 36 Vt. 645, 651.

*Davenport & Eddy* and *J. L. Martin*, for the defendant.

A sale of personal property is generally not good as against creditors without change of possession. Official sales are, however, an exception. *Farnsworth* v. *Shepard*, 6 Vt. 521 ; *Gates* v. *Gaines*, 10 Vt. 346. A sale to be official must be *in invitum*, and it must appear that all proper steps were taken. *Austin* v. *Soule*, 36 Vt. 645. It is not official when it rests wholly or in part on the contract or consent of the parties. No arrangement can be made by which such a sale can operate a lien valid against creditors. *Kelly* v. *Hart*, 14 Vt. 50 ; *Webster* v. *Denison*, 25 Vt. 493. The sale here was not a proceeding *in invitum*, but by consent. Moreover it was not absolute, Graham having a right to redeem.

Fraud is a question of law, especially where there is no dispute about facts. *Sturtevant* v. *Ballard*, 9 Johns. 337 ; 1 Bur. 243 ; *Farnsworth* v. *Shepard, supra.*

The opinion of the court was delivered by

POWERS, J. The sale on the West River Bank execution was regular in form, and valid to extinguish the debtor's title to the property, unless it operated a fraud by reason of a secret trust in favor of the debtor. If a creditor uses the forms of law merely to protect the equitable title or beneficial use of the property in the debtor, the transaction may be impeached. If the creditor proceeds *bona fide* to secure his debt by a sale of the debtor's property on execution, according to the forms of law, and takes the title to himself, and, in kindness to the debtor, gives him the use of the property after the sale, no secret trust is raised.

The presumption is in favor of the regularity of Carr's proceedings as an officer. *Omnia præsumuntur rite et solemniter esse acta.*

The evidence tended to show that the bank proceeded in good faith to collect its debt; that Graham's confession of judgment was not pursuant to a scheme to defraud other creditors, but that he yielded to the demand of the bank for pay; that Graham arranged with the Taylors to bid in the property and let him have the use of it, and work out the debt to the bank and the debt to them. The sale in fact did not satisfy the bank execution. The Taylors were strangers to the bank execution, and might lawfully bid in the property sold on that execution, and let it remain in Graham's hands, and pay the debts as proposed. The evidence tended to show that the bank stood clear of any trust attaching to the property sold on their execution, that they did not make use of the confession of judgment and the sale of the property on execution for the purpose of creating a mere lien upon the property, which they were to hold as security, but to extinguish all title to the property in the debtor. If this was true, the Taylors got the debtor's title. *Webster* v. *Denison*, 25 Vt. 493, would not, therefore, be in point. Whether the equitable ownership of the property still remained in Graham after the sale, was a question to be submitted to the jury under proper instructions.

*Judgment reversed, and new trial granted.*