[S. F. No. 11250. In Bank.—February 27, 1925.]

CONTINENTAL CASUALTY COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA and HERMAN FORD, etc., Respondents.

[1] WORKMEN'S COMPENSATION ACT — EVIDENCE — CONSTRUCTION OF SECTION 60A.—While the terms of section 60a of the Workmen's Compensation Act (Stats. 1917, p. 871) are broad and comprehensive, covering as they do the *admission into the record and*

*use as proof* of any fact in dispute of any evidence objectionable under the common law and statutory rules, yet it was not intended thereby that it would be any less the duty of the Industrial Accident Commission to follow the prescribed procedure and rules of evidence, and it still remains the duty of the Commission to conduct the proceedings so that there will be as little occasion as possible for the courts to resort to the said rule of decision.

[2] ID.—RECEPTION OF EVIDENCE AFTER HEARING—WAIVER OF OBJECTION.—Where seventeen months after the hearing before the Industrial Accident Commission of an application for an award for death there was served upon the parties and filed with the Commission a copy of the testimony of the witnesses at the coroner's inquest, upon which the Commission based an award to the applicant, the evidence, although hearsay, was admissible under the amendment of 1917 (Stats. 1917, p. 871), and while the method of its reception was irregular, objection thereto was waived where it was not made in the proceedings before the Commission, nor at any time before the oral argument on an application for a writ of *certiorari* to review the award.

---

(1) Workmen's Compensation Act, **C. J.**, p. 115, n. 32.    (2) Workmen's Compensation Act, **C. J.**, p. 115, n. 32; 38 Cyc., p. 1395, n. 54.

APPLICATION for a Writ of Certiorari to review an award of the Industrial Accident Commission of compensation for death.    Award affirmed.

The facts are stated in the opinion of the court.

Hettman & Hoge for Petitioner.

W. H. Pillsbury for Respondents.

LAWLOR, J.—On October 11, 1922, Herman Ford, a minor, by his guardian *ad litem* and trustee, Josephine Ford, filed an application in the Industrial Accident Commission for the adjustment of a claim against the Merchants Improvement Company and the Continental Casualty Company.    The claim is based on the following alleged facts: On August 16, 1922, Wilbur Ford was killed, the result of an injury arising out of and in the course of his employ-

---

2. Admissibility of findings of coroner to show cause of death in workmen's compensation cases, note, 6 **A. L. R.** 548.

ment by the Merchants Improvement Company and that Herman Ford, a minor, is the dependent son of the deceased. Wilbur Ford, aged fifty-one years, was a porter engaged in repairing an elevator for the Merchants Improvement Company in the California Fruit Exchange building in the city of Sacramento, when he was caught between the elevator and the wall of the shaft and fell to the bottom of the pit, sustaining injuries in the abdominal region from which he died on August 16, 1922. Under his employment he received a wage of $100 per month and worked six days a week. The answer of the defendants denied that Wilbur Ford was the employee of the Merchants Improvement Company.

It was found by the Commission that the injuries sustained by Wilbur Ford arose out of and in the course of his employment and proximately caused his death; that Herman Ford, his adopted minor son, is in the custody of his foster mother, Josephine Ford, and under the provisions of a decree of divorce the deceased was required to pay $10 per month for the support of said minor; that Herman Ford is conclusively presumed to be totally dependent upon deceased and entitled to a death benefit of $3,320 payable at the rate of $14.25 per week, in addition to $100 burial expense, and that the foregoing benefit was based upon a wage of $100 per month. It was further found that the "evidence herein is insufficient to establish as a fact that the defendant, R. Smith, was, at the time of said injury, the employer of the deceased, Wilbur Ford." The award made was in accordance with these findings. Subsequently, the death benefit was increased to the sum of $3,662, payable at the rate of $15.67 per week upon the basis of a wage of $110 per month.

The Continental Casualty Company, a corporation, the insurance carrier of the Merchants Improvement Company, against whom the award was made, petitioned this court for a writ of review of the foregoing award and proceedings on the ground "(a) That said Commission acted without and in excess of its powers in making its said decision, order and award. (b) That the evidence does not justify the findings of fact. (c) That there was no evidence legally sufficient to justify the findings and award of said Commission."

In this behalf the petitioner contends that the evidence in the case does not justify the finding that the Merchants Im-

provement Company was the employer of the deceased, Wilbur Ford; that according to the testimony of Fred L. Martin, the secretary and manager of said building, one R. Smith was paid the sum of $325 per month under a contract with the Merchants Improvement Company to do the janitor work on certain floors in said building; that R. Smith had no connection with the Merchants Improvement Company other than by said contract, which had been in force for two or three years; that R. Smith employed various persons to assist him, of whom Wilbur Ford, the deceased, was one, whom Smith paid out of his salary; that Fred L. Martin did not know any of the employees of R. Smith; that he had nothing whatsoever to do with them; that the Merchants Improvement Company exercised no control whatsoever over the manner or method in which L. Smith performed the work; that it did not hire or discharge the employees of R. Smith; that it did not pay the deceased any money and did not know that he was working in the building; that R. Smith was an independent contractor and the Merchants Improvement Company did not control his full time since he was free to accept other contracts and do whatever work he saw fit to do, and "that according to all of the testimony . . . Wilbur Ford was employed by, compensated by, subject to control of and working under the instructions of the defendant R. Smith; that the defendant, R. Smith, was an independent contractor performing said work under a contract for a stipulated sum of money and was responsible to the Merchants Improvement Company for results only; that said Merchants Improvement Company was not the employer of said deceased, Wilbur Ford."

The testimony of Fred L. Martin, the secretary and manager of the building operated by the Merchants Improvement Company, at the original hearing before the Commission on November 16, 1922, is that R. Smith was employed by the Merchants Improvement Company under a contract to do the janitor work on the second, third, fourth, fifth, sixth, seventh, ninth, and tenth floors; that he was to hire his own men; that he was given a master key to all the floors and offices he contracted to clean; that he never directed him as to how the work was to be done; that George Erhardt, the engineer, was instructed to give him directions and inspected the building every day; that no control was exercised over

the way in which R. Smith did the work; that he did not know who the employees of R. Smith were; that he did not discharge any employee of R. Smith; that no money was ever paid by the Merchants Improvement Company to any such employee; and that all the witness was concerned with was the result of the employment.

George Erhardt, the superintendent and engineer of the building, testified that he was instructed by the manager to see that all the janitor work in the offices was done; that on various occasions he spoke to R. Smith and "jacked him up" about the work; that he never spoke to the men "because they were working for Smith and Smith was the man I held responsible for the work"; that he was never around when R. Smith was doing the work; that the company furnished the appliances used in the janitorial work; that he would not "fire" R. Smith without consulting the manager; and. that he never exercised any authority or any control directly or indirectly over Wilbur Ford, the deceased.

From the return to the writ of review it appears that the testimony above mentioned was heard before the Commission on November 16, 1922, and filed on December 7, 1922. Seventeen months later, a copy of the testimony of the witnesses at the coroner's inquest was "served and filed April 28, 1924," upon R. Smith, the Continental Casualty Company and Josephine Ford, as guardian *ad litem*. In the transcript of the coroner's inquest, R. Smith purports to have testified that "Mr. Ford was employed by the California Fruit people [Merchants Improvement Company] and under my direction .... This man was working under my instruction as a janitor." Upon this supplemental testimony the Commission on May 22, 1924, made the finding above mentioned that Wilbur Ford, the deceased, was in the employ of the Merchants Improvement Company and sustained injuries resulting in death arising out of and in the course of his employment, and based the award on such finding.

On June 10, 1924, a petition for rehearing before. the Commission was interposed by the Continental Casualty Company upon the ground that the evidence shown by the record was not sufficient to establish the finding that the deceased was employed by the Merchants Improvement Company. This petition was granted, and the following statement made by the Commission: "It further appearing

to the satisfaction of this Commission that no good reason exists for taking further testimony, the Commission now reconsiders and redetermines the original cause without setting a time and place for such further hearing, and now makes its Findings and Award.'' As appears above, the award was amended in the amount of the death benefit based on the testimony of R. Smith that prior to the accident he had increased the deceased's wage to $110 per month.

It is clear that the Commission based its findings and award upon a variation between the testimony of R. Smith given at the coroner's inquest held August 22, 1922, and that received at the hearing before the Commission on November 16, 1922, touching the status of deceased, and resolved this variation in favor of the latter's employment by the Merchants Improvement Company. Upon this variation respondents contend that the former testimony impeached the latter. Petitioner asserts that the court cannot be expected ''to take this contention seriously,'' because 'respondents cannot at this stage of the proceedings drag into the case testimony given before a coroner's inquest or any other testimony that has not heretofore been produced in the case.''

The first question is whether the testimony given at the coroner's inquest was competent and was properly before the Commission. It is hearsay testimony and was not admissible under the original Act. In *Englebretson* v. *Industrial Acc. Com.*, 170 Cal. 793 [151 Pac. 421], it was held that the common law or statutory rule against the admission of hearsay evidence as proof of a fact under section 77 of the act (Stats. 1913, p. 279), is not a mere technical rule of evidence, and that the Commission has no power to make an award where the only evidence of a jurisdictional fact consists of hearsay testimony. The legislature, however, has since expressly provided that ''All hearings and investigations before the commission or any member thereof, or any referee appointed thereby, shall be governed by this act and by the rules of practice and procedure adopted by the commission, and in the conduct thereof neither the commission, nor any member thereof, nor any referee appointed thereby, shall be bound by the common law or statutory rules of evidence and procedure, but may make inquiry in such manner, through oral testimony, and written and printed rec-

ords, as is best calculated to ascertain the substantial rights of the parties and carry out justly the spirit and provisions of this act. . . . ''    (Stats. 1917, p. 871, sec. 60a; see, also, *Perry* v. *Industrial Acc. Com.,* 180 Cal. 497 [181 Pac. 788]; *McFeely* v. *Industrial Acc. Com.,* 65 Cal. App. 45 [223 Pac. 413]; *Western Indemnity Co.* v. *Industrial Acc. Com.,* 174 Cal. 315 [163 Pac. 60]; *Employers' Liability Assur. Corp.* v. *Industrial Acc. Com.,* 179 Cal. 432 [177 Pac. 273]; *Pacific Gas & Electric Co.* v. *Industrial Acc. Com.,* 180 Cal. 497 [181 Pac. 788]; *State Compensation Insurance Fund* v. *Industrial Acc. Com., ante,* p. 174 [231 Pac. 996].)

Petitioner's contention, however, is that the testimony was not "admitted," since "there is absolutely no stipulation or admission upon the part of petitioner that the testimony attributed to R. Smith was as a matter of fact R. Smith's testimony"; that it is not hearsay testimony for the reason that no witness has testified that he heard R. Smith give any such testimony; and that although petitioner was aware of the fact that such testimony was desired by the Commission and actually assisted the Commission in obtaining a copy of it, it did not know and was not able to ascertain until one day before the oral argument in this court that it had been included in the return to the writ of review.

The question whether this testimony was properly made a part of the return was first discussed during the oral argument herein and the point was thereafter taken up in the briefs filed. No objection was made to this testimony in the petition for a writ of review, and we have just called attention to petitioner's claim that it did not know it was included in the return until the day before the oral argument. The brief of respondents states that the Continental Casualty Company was notified of their desire to procure a copy of such testimony and quotes the response in the form of a letter which reads as follows:

"With reference to your letter of April 19th beg to advise that the writer was in Sacramento the latter part of last week. While there a call was made on the coroner in an effort to speed the forwarding to you of copy of inquest. At that time the coroner's records were checked up and it was noted that request had been made by the Industrial Accident Commission that they be furnished with such copy. It seems, however, that the reporter who writes up

the notes of the proceedings is insisting on $3.00 fee for transcription. The coroner, however, advises me that he would endeavor to get a copy forwarded to you soon and I trust that it will reach you in the near future."

The return recites the testimony of R. Smith before the coroner's inquest and contains the following purported filing mark already set forth: "Served and filed April 28, 1924." It is represented in respondents' brief that copies of such testimony were sent by mail to the three principal parties and that only the one addressed to Josephine Ford was returned unclaimed by the postoffice department. Petitioner does not state that the copy was not actually received by it, the burden of its claim being that the testimony had no place in the return and was, therefore, for the reasons already stated, not even hearsay.

It may be conceded that the manner in which the testimony in question was received was informal. A more satisfactory way and one more in keeping with orderly procedure would have been to have given notice of intention to reopen the case for the admission of certain supplemental testimony and on the day noticed to produce the coroner or other competent witness with the transcript of the proceedings of the inquest properly certified and also prove that the R. Smith who gave the testimony at such proceeding concerning the status of the deceased and the R. Smith who testified before the Commission was one and the same person.

It was realized by the legislature, however, that in proceedings before the Commission there will be occasional departures from rules of evidence and procedure and hence section 60a of the act also provides: "No informality in any proceeding or in the manner of taking testimony shall invalidate any order, decision, award, rule or regulation made, approved or confirmed by the commission; nor shall any order, award, rule or regulation be invalidated because of the admission into the record, and use as proof of any fact in dispute, of any evidence not admissible under the said common law or statutory rules of evidence and procedure." (Stats. 1917, p. 871.)

[1] While the terms of this section are broad and comprehensive, covering as they do the *admission into the record and use as proof* of any fact in dispute of any evidence objectionable under the common law and statutory rules, yet

it was not intended thereby that it would be any the less the duty of the Commission to follow the prescribed procedure and rules of evidence. In other words, it still remains the duty of the Commission to conduct the proceedings so that there will be as little occasion as possible for the courts to resort to the said rule of decision.

But apart from this rule of decision we cannot perceive how petitioner has any substantial ground of complaint. Petitioner was put upon notice by respondents indicating that the testimony at the coroner's inquest was desired. It is not stated that such testimony was not filed in the Commission nor actually received by petitioner; if it was received by petitioner, any objection thereto, either to its substance or the form in which it was presented, should have been made to the Commission so that if well founded it might be obviated. No such objection was made. In such a situation it was incumbent on petitioner, if it had not done so, to make inquiry as to the purpose for which the supplemental testimony was sought and to acquaint itself with the manner of its introduction.

Moreover, petitioner does not claim that the same R. Smith did not testify before both tribunals; that the coroner's transcript was not in fact filed; that the testimony was not given by Smith; that it was not correct or that it was not a true copy. The contention is, as already stated, that it was not evidence at all on the question of fact whether the deceased was the employee of the Merchants Improvement Company.

[2] Assuming that the admission and consideration of this evidence by the Commission was irregular, we think the objection made by petitioner comes too late. It does not appear that any objection was made by petitioner at any time to the admission of the testimony as evidence in the case prior to the oral argument, nor that petitioner in the petition for rehearing requested permission to cross-examine the said witness. Approximately twenty-five days elapsed between the time the testimony was filed and the making of the findings and award. Furthermore, a rehearing was granted thereafter and apparently no objection was made to such testimony. The Commission found "that no good reason exists for taking further testimony" and entered the final award on July 2, 1924, approximately sixty days after the

transcript of the testimony was filed. Petitioner did not object to such testimony on the ground it was not certified. The return does not show it was certified, but it purports to be a copy of the testimony "In the Matter of the Inquisition upon the Body of Wilbur Ford," and it would be yielding form to substance to assume it was not evidence in the case filed with the Commission at the time the findings were made.

We conclude that the copy of the transcript of the testimony which purports to have been given at the coroner's inquest is hearsay testimony but admissible; that it was filed as evidence in the proceedings before the Commission April 28, 1924, and was properly included in the return to the writ of review; that the petitioner does not claim it did not have notice that such copy was filed, and knowledge that it would be included in the return to the writ of review will therefore be imputed; that while its admission was attended with informality and irregularity, petitioner made no objection thereto, and it must therefore be deemed to have waived all objection to the manner of taking such testimony and its admission into the record. It follows that there being a conflict in the evidence as shown by the return to the writ of review, on the question of the employer of the deceased, and the Commission having found that the Merchants Improvement Company was the employer, insured by the Continental Casualty Company, the award based upon such finding must be affirmed, and it is so ordered.

Shenk, J., Seawell, J., Waste, J., and Richards, J., concurring.

MYERS, C. J., Dissenting.—I dissent. Waiving all questions relating to the admissibility and use as evidence of the purported copy of the testimony at the coroner's inquest, and assuming that the witness R. Smith actually made the statements at the inquest which he is here assumed to have made, I am of the opinion that it appears from the record herein that the respondent Commission was without jurisdiction to render the award, for the reason that the relationship of employer and employee was not shown to have existed between the Merchants Improvement Company, owner of the building, and the deceased employee. It was true that the legislature by the amendments to the Workmen's Compensation Act has abrogated for the purpose of hearings before

the Industrial Accident Commission all of the common law and statutory rules of evidence and procedure, and has provided no other rules of evidence to take the place thereof. It cannot have been intended, however, to vest the Commission with authority to render an award without the production of some evidence of some sort reasonably tending to prove the existence of the jurisdictional facts, one of which in each such case is the relationship of employee and employer between the injured person and the one from whom compensation is sought. If such were the intention it would be ineffective under the limitations of our constitution (Const., art. XX, sec. 21; *Carstens* v. *Pillsbury,* 172 Cal. 572 [158 Pac. 218]; *Pacific Gas & E. Co.* v. *Industrial Acc. Com.,* 180 Cal. 497 [181 Pac. 788]; *Worswick Co.* v. *Industrial Acc. Com.,* 181 Cal. 550 [185 Pac. 953]; *Flickenger* v. *Industrial Acc. Com.,* 181 Cal. 425 [19 A. L. R. 1150, 184 Pac. 851]; *Fidelity & C. Co.* v. *Industrial Acc. Com.,* 191 Cal. 404 [216 Pac. 578]). The authority and duty still rests in this court, upon proper application and showing, to review an award of the respondent Commission. Such review looks to the question of jurisdiction, and notwithstanding the abrogation of the common law and statutory rules of evidence, it is still the duty of the court upon such review to annul an award where the record shows that there was no evidence of any sort having a reasonable tendency to establish the existence of an essential jurisdictional fact.

The statement of the witness Smith at the coroner's inquest that "Mr. Ford was employed by the California Fruit people and under my direction . . . This man was working under my instruction as a janitor," was obviously made merely by way of identification of the deceased. It was no more than a conclusion of the witness, a mixed conclusion of law and fact, and there is nothing in the record to indicate that this witness had the slightest comprehension of the legal distinction between the rendition of service in the capacity of an employee and the rendition of similar service in the capacity of an independent contractor. I doubt that the quoted statement may even be justly regarded as tending substantially to impeach the testimony later given by this witness before the Commission. The later testimony was as to *facts* rather than *conclusions,* and from the facts so testified to by him the conclusion would inevitably follow

that he was an independent contractor and that the deceased was his employee. Conceding, however, that his testimony before the Commission was impeached by the quoted state-- ments made by him at the coroner's inquest, there remains in the record the testimony of Martin and Erhardt, whose testimony was in nowise impeached and who testified to facts and circumstances from which, if true, no conclusion can be drawn other than that Smith was an independent contractor and the deceased his employee. This testimony being in nowise impeached and in nowise inherently improbable, the Commission was bound to accept it as true unless it was substantially contradicted (10 Cal. Jur. 1143; *Stewart* v. *Silva,* 192 Cal. 405, 411 [221 Pac. 191], and cases cited). I cannot regard the quoted testimony of Smith as a substantial contradiction thereof, and I therefore think that the award herein should be annulled.

Lennon, J., concurred.