JUDITH B. NIEVA & Co., S. EN C., demandante y apelada, *v.* HON. MANUEL V. DOMENECH, TESORERO DE PUERTO RICO, ET ALS., demandados y apelantes.

No. 6052.—*Sometido:* Mayo 23, 1933. *Resuelto:* Febrero 2, 1934.

*Hon. Procurador General B. Horton*, y *R. Cordovés Arana*, abogados de los apelantes; *O. Souffront*, abogado de la apelada.

El Juez Asociado Señor Hutchison, emitió la opinión del tribunal.

 La sección 30 de la Ley de Indemnizaciones a Obreros, según fué enmendada en 1930 (leyes de ese año, páginas 395, 397) lee así:

"Los aseguradores que aseguraren obreros bajo las disposiciones de esta Ley, a petición de la Comisión Industrial, proveerán por escrito cualquiera información requerida en conexión con la administración de esta Ley, incluyendo cualquier estadística y los nombres de todos los patronos asegurados por ellos.

"Todo patrono asegurado con el fondo del Estado, y todo patrono asegurado con compañías particulares o que es su propio asegurador, al dar cuenta los primeros con sus nóminas anuales, al pagar sus primas a las compañías los segundos, o al pagar su impuesto los terceros, tal como se establece en la sección 52 de esta Ley, deberán incluir en tales nóminas los salarios pagados a todos los obreros que estuvieren trabajando o fueren a emplear bien por ajuste, o ya bajo una persona con quien ajustó el patrono o bajo un contratista o subcontratista independiente empleado contratado por dicho patrono, y toda cuota, impuesto o contribución cobrada por el Estado o por las compañías particulares se basará sobre la nómina corriente del patrono, si es del Estado, computada en esa forma, o sobre los informes rendidos por los patronos que son sus propios aseguradores o que están asegurados con compañías particulares, en los cuales deberán estar incluídos los trabajadores antes mencionados; *Disponiéndose*, que esta disposición no será aplicable a los patronos para quienes se hiciera trabajo por un contratista independiente que estuviere asegurado como patrono de acuerdo con las disposiciones de esta Ley."

La corte de distrito resolvió que esta sección era inconstitucional en cuanto por ella se exige a un patrono que incluya en sus nóminas que remita a la Comisión Industrial las cantidades pagadas a contratistas independientes o subcontratistas, o las cantidades pagadas por tales contratistas independientes o subcontratistas a obreros que no han contratado con dicho patrono, que no están sometidos a sus órdenes,

dirección y *control,* que no trabajan en su establecimiento bajo su supervisión, y que no son sus empleados inmediatos; y en cuanto por ella se exige que el patrono asegure a tales obreros. Para sostener este criterio el juez de distrito se fundó en: *Carstens* v. *Pillsbury et al.,* 172 Cal. 572; *Sturdivant* v. *Pillsbury et als.,* 172 Cal. 581 y *Thaxter* v. *Finn,* 178 Cal. 270. Los abogados de la parte apelada también citan *Western Indemnity Co.* v. *Industrial Accident Commission,* 172 Cal. 766; *First Christian Church* v. *Industrial Accident Commission,* 173, Cal. 552; *Pacific Gas and Electric Company* v. *Industrial Accident Commission,* 180 Cal. 497; y *Worswick Company* v. *Industrial Accident Commission,* 181 Cal. 550.

La Constitución de California cuando se resolvieron los casos más antiguos disponía que ''la legislatura puede, mediante legislación adecuada, crear y poner en vigor la responsabilidad de parte de todos los patronos para compensar a sus empleados por cualquier daño ocasionado a dichos empleados en el curso de su empleo, independientemente de la culpa de una u otra parte.'' En esos casos más antiguos la Corte Suprema de California interpretó la palabra ''empleados'' en el sentido de significar ''empleados inmediatos'' y resolvió que la legislatura no tenía potestad a virtud de esa concesión de poderes, para crear y hacer valer cualquiera responsabilidad de parte de los patronos con respecto a obreros que no fuesen empleados inmediatos de aquellos. En algunos de los casos posteriores la misma corte resolvió que una enmienda a la Constitución no había alterado el significado de las palabras ya interpretadas, y se atuvo a la doctrina de los casos anteriores.

Nuestra Carta Orgánica no fija esa restricción sobre la autoridad legislativa en ella contenida. Por los términos de su artículo 37 esa autoridad ''se aplicará a todos los asuntos de carácter legislativo que no sean localmente inaplicables.'' El artículo 2 dice que ''nada de lo contenido en esta Ley será interpretado en el sentido de limitar la facultad de la Asam-

blea Legislativa para decretar leyes para la protección de la vida, salud y seguridad de empleados y obreros.'' La Constitución de California trataba específicamente de patronos y *sus* empleados. La palabra ''sus'' es significativa. Basta para distinguir los casos de California. El pensamiento predominante en la mente de los que redactaron la Constitución de California fué la relación entre patronos y ''sus empleados'', y la responsabilidad de los patronos provenientes de esa relación. Es lógico inferir que cuando hablaron de patronos y ''sus empleados'' lo que tuvieron en mente fué su relación inmediata. En realidad cabe dudar seriamente que en alguna ocasión ellos pensaran que alguna legislatura del porvenir tratase de crear y poner en vigor una responsabilidad de parte del patrono por lesiones recibidas por el empleado de un contratista independiente que no estuviera asegurado. Al ocuparse de Puerto Rico el Congreso adoptó una actitud más liberal. La palabra ''empleados'', desde luego, lleva implícita la existencia de un patrono, pero no hay indicio alguno de que al Congreso le importara la identidad de tal patrono o la existencia de una relación inmediata. Cuando el Congreso usó la palabra ''empleados'' sin condición o restricción alguna, quiso referirse a todos y cada uno de los empleados, cualquiera que fuese su patrono. Su propósito fué excluir la posibilidad de que mediante interpretación judicial viniera a menos el poder de policía. No se alarmó por la posibilidad de que la Legislatura Puertorriqueña pudiera seguir el ejemplo de otras Legislaturas Americanas al exigir a los patronos, como base para la fijación de la cuantía de las primas de seguro o de las tasaciones, que suministren información relativa a las cantidades pagadas a los empleados de contratistas independientes o subcontratistas que no estaban asegurados. El artículo 2 no tuvo por mira una limitación al poder de policía. Incidentalmente, es un reconocimiento pleno de la existencia de ese poder, tal como fué conferido a la Legislatura Insular, sujeto solamente al principio general que rige el ejercicio del

mismo. Primordialmente es una disposición expresa para evitar que el poder judicial entorpezca la voluntad legislativa mediante la interpretación de cualquiera parte de la Ley Orgánica. Estuviese acertada o equivocada la Corte de California en su interpretación de la Constitución de California, la doctrina de los casos de ese estado no establece que el artículo 30 de la Ley de Indemnizaciones a Obreros (supra) sea inconstitucional.

*La sentencia apelada debe ser revocada.*

Los Jueces Asociados Señores Wolf y Aldrey, disintieron.[*]