[Crim No. 1382. Second Appellate District, Division Two.—January 24, 1927.]

THE PEOPLE, Respondent, v. JACK DENAULT, Appellant.

[Crim. No. 1460. Second Appellate District, Division Two.—January 24, 1927.]

In the Matter of the Application of FELIPE LUNA for a Writ of Habeas Corpus.

[1] CRIMINAL LAW—MISDEMEANOR—JUSTICE'S COURT—JURISDICTION.— A justice's court has no jurisdiction of what is termed a high grade misdemeanor.

[2] ID. — MUNICIPAL COURTS — JURISDICTION EXCLUSIVE OF SUPERIOR COURT.—The jurisdiction conferred on the superior court by section 5 of article VI of the constitution over certain offenses, "when not otherwise provided for," is conditioned upon the establishment of other courts upon which the same jurisdiction shall be conferred, and the jurisdiction conferred upon municipal courts by section 28 of the act concerning municipal courts (Stats. 1925, p. 648) and section 1462 of the Penal Code is exclusive of a like jurisdiction in the superior court.

[3] ID.—MISDEMEANORS COMMITTED OUTSIDE OF BOUNDARIES OF MUNICIPALITY—JURISDICTION—CONSTITUTIONAL LAW.—Under section 11 of article VI of the constitution, the criminal jurisdiction of municipal courts is strictly local as to each court, only those offenses which are committed within the limits of the municipality in which the court was created and in which it sits being cognizable by it, and the legislature is not empowered by the constitution to vest in municipal courts a jurisdiction over so-called high grade mis-

2. See 7 Cal. Jur. 899.

demeanors committed in parts of the county which lie outside the boundaries of any city in the county within which a municipal court has been established.

[4] COURTS—JURISDICTION.—Where a grant of jurisdiction to a court over various matters is made by a single sentence, and the jurisdiction over some of them is necessarily local, the entire grant confers only a local jurisdiction, unless it be specifically provided in the grant that as to some of the matters mentioned an exercise of extraterritorial jurisdiction is intended.

[5] MUNICIPAL COURTS — JURISDICTION — CONSTITUTIONAL LAW. — Since municipal courts are inferior to superior courts by reason of the fact that the superior court may entertain an appeal from the municipal court, the grant of jurisdiction to municipal courts under section 11 of article VI of the constitution must be strictly construed and is exclusive of the jurisdiction formerly vested in the superior court by section 5 of article VI of the constitution.

[6] ID. — MISDEMEANORS COMMITTED OUTSIDE BOUNDARIES OF MUNICIPALITY—SUPERIOR COURT—JURISDICTION—CONSTITUTIONAL LAW.— Section 11 of article VI of the constitution, authorizing the legislature to provide for the jurisdiction of municipal courts "except in the particulars otherwise specified in this section," does not authorize a grant of jurisdiction under section 1 of said article to municipal courts over high grade misdemeanors committed in the territory of a county which lies outside the limits of cities in which municipal courts are created, the jurisdiction as to such offenses residing in the superior court.

---

(1) 16 C. J., p. 154, n. 88.     (2) 16 C. J., p. 152, n. 68.     (3) 12 C. J., p. 816, n. 2.     (4) 15 C. J., p. 810, n. 75 New.     (5) 12 C. J., p. 699, n. 71; 15 C. J., p. 863, n. 56 New, p. 1131, n. 22.     (6) 16 C. J., p. 152, n. 68.

APPEAL from a judgment of the Superior Court of Los Angeles County. Carlos S. Hardy, Judge. Affirmed.

Application for a Writ of Habeas Corpus to secure release from custody after conviction of a high grade misdemeanor. Writ denied.

The facts are stated in the opinion of the court.

W. W. Judd for Appellant.

A. T. Folsom for Petitioner on *Habeas Corpus.*

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, Asa Keyes, District Attorney, and Tracy Chatfield Becker for Respondent on the Appeal.

Asa Keyes and Tracy Chatfield Becker for Respondent on *Habeas Corpus.*

WORKS, P. J.—The facts presented on the appeal and those alleged in the petition in the original proceeding are so similar that they present the same legal questions. Disposition of those questions, therefore, may be made by a single opinion, and upon a statement alone of the few material facts presented upon the appeal.*

[1] There are in the county of Los Angeles two municipal courts. Appellant was convicted of what is termed a high grade misdemeanor. The alleged offense was committed in territory of the county which lies outside the territory of the cities within which, respectively, the municipal courts hold their sessions. The ultimate question presented for decision is whether the superior court had jurisdiction of the offense. It is conceded by the parties—and correctly so—that a justice's court has no jurisdiction of such misdemeanors as that with which appellant was charged.

Section 28 of the act of the legislature concerning municipal courts (Stats. 1925, p. 648) provides: "Each municipal court shall have original jurisdiction in all criminal cases amounting to misdemeanor, punishable by fine or imprisonment in the city or city and county, or county jail, or punishable by fine or such imprisonment where the offense charged was committed within the county in which the municipal court is established." Section 1462 of the Penal Code reads, in part: "Whenever a municipal court shall have been established, . . . such court shall have exclusive jurisdiction of all misdemeanors punishable by fine or by imprisonment, or by both such fine and imprisonment, committed in the city . . . where such municipal court is held. . . . In each city wherein a municipal court shall have been established, such courts shall also have jurisdiction over any misdemeanor committed in the county in which such city is located."

These enactments of the legislature, if they do not infringe the provisions of the constitution, confer upon the

*REPORTER'S NOTE.—The matters covered by this opinion were passed on by the supreme court in *In re Luna,* 201 Cal. 405 [256 Pac. 76], and the application for a writ of *habeas corpus* was granted and the petitioner discharged.

municipal courts a jurisdiction over such offenses as that with which appellant was charged, laying aside for the moment the question whether the jurisdiction so attempted to be conferred is exclusive, or whether it is concurrent with a jurisdiction resting in the superior court. The jurisdiction over such charges was without doubt vested in the latter courts before the passage by the legislature of the enactments mentioned.

Sections 1, 5, and 11 of article VI of the constitution are material to a discussion of the questions which arise upon the appeal.

Section 1 reads: "The judicial power of the state shall be vested in the senate, sitting as a court of impeachment, in a supreme court, district courts of appeal, superior courts, such municipal courts as may be established in any city or city and county, and such inferior courts as the legislature may establish in any incorporated city or town, township, county or city and county" (Stats. 1923, p. 1678).

Section 5 provides, in part: "The superior courts shall have original jurisdiction . . . in all criminal cases amounting to a felony, and in all cases of misdemeanor not otherwise provided for. . . . " (Stats. 1923, p. 1678.)

Portions of section 11 follow: "In any . . . city which is governed under a charter . . . containing a population of more than forty thousand inhabitants, . . . a municipal court may be established as in this article provided, anything in this constitution to the contrary notwithstanding, . . . Municipal courts shall have original jurisdiction . . . in all cases at law in which the demand, exclusive of interest, or the value of the property in controversy, amounts to one thousand dollars or less, and of actions of forcible or unlawful entry or detainer where the rental value is one hundred dollars or less per month, and where the whole amount of damages claimed is one thousand dollars or less, and in cases to enforce and foreclose liens on personal property where the amount of such liens or the value of the property is one thousand dollars or less, and in all criminal cases amounting to a misdemeanor punishable by fine and imprisonment in the city . . . or county jail, or punishable by fine or such imprisonment, [which offenses include what are known as high grade misdemeanors]. . . . The legislature shall provide by general law for the constitution. regu-

lation, government and procedure of municipal courts, and for the jurisdiction thereof except in the particulars otherwise specified in this section, and for the establishment of municipal courts in cities [of the size and character above specified] . . . Upon the taking effect of such general law, a municipal court may be established in such cities'' [upon the completion of certain preliminary steps] (Stats. 1923, p. 1679).

[2] If it be conceded for the moment that the above-quoted provisions of section 28 of the act of 1925 and of section 1462 of the Penal Code are not in excess of the terms of the constitution upon grounds later to be discussed, it seems plain that the jurisdiction attempted to be conferred upon the municipal courts by them is exclusive and that the sections have ousted the former jurisdiction of the superior courts over the same matters. So much is apparent from *Green* v. *Superior Court,* 78 Cal. 556 [21 Pac. 307, 541]. In that case it appeared that jurisdiction over certain offenses had been vested by the constitution (art. VI, sec. 5) in the superior court when ''not otherwise provided for.'' Jurisdiction over the same offenses was later conferred by statute upon the police court of the city and county of San Francisco, which court was created by the legislature under appropriate provisions of the constitution. Green was indicted in the superior court in and for the city and county of San Francisco for the commission of one of those offenses. He asked the supreme court for the writ of prohibition to halt proceedings under the indictment, and contended that the statute conferring jurisdiction on the police court vested an exclusive jurisdiction in that tribunal. The supreme court upheld the contention in the following language: ''The evident purpose of the constitutional provision, as evinced by its language, is that the jurisdiction of the superior court shall be conditioned upon the establishment of other courts upon which the same jurisdiction shall be conferred, and when that condition happens, and the jurisdiction is by the legislature conferred upon such inferior courts, from that time the constitution itself transfers such jurisdiction from the superior court and vests it in the inferior courts. From that time the jurisdiction is 'otherwise provided for,' and the jurisdiction of the superior court at once ceases.'' That part of section 5 of article VI of the consti-

tution which is above quoted is substantially the same as the language of the same section as it stood when it was construed in *Green* v. *Superior Court*. We are therefore of the opinion that whatever jurisdiction was vested in the municipal courts by section 28 of the act of 1925 and by section 1462 of the Penal Code is exclusive of a like jurisdiction in the superior court.

[3] The most disturbing question which is now before us is whether the legislature was empowered by the constitution to vest in the municipal courts a jurisdiction over high grade misdemeanors committed in parts of a county which lie outside the boundaries of any city in the county within which a municipal court has been established. It is contended that this question is concluded by the decision in *Green* v. *Superior Court*, but we think it is not. The police court whose jurisdiction was under consideration in that case was the police court of the city and county of San Francisco and the superior court whose jurisdiction was questioned was the superior court of the state of California in and for that city and county. The area which the police court was "of" and which the superior court was "in and for" was the same—the territory included within the exterior boundaries of the city and county. We should have the same situation here if the county of Los Angeles were coterminous with either the city of Long Beach or the city of Los Angeles, in which two cities municipal courts have been established. There is within the boundaries of the two cities, however, but a fraction of the territory of the county. It is that fact which renders *Green* v. *Superior Court* inapplicable and which makes the question here presented a difficult one.

A point arises from the language of the constitution which must be considered as a stepping-stone to the discussion of the questions springing from the two enactments of the legislature attempting to confer jurisdiction upon the municipal courts. The organic law itself vests a certain jurisdiction in those tribunals. We have already seen that section 11 of article VI contains the provision: "Municipal courts shall have original jurisdiction . . . in all cases at law in which the demand, exclusive of interest, or the value of the property in controversy, amounts to one thousand dollars or less, and of actions of forcible or unlawful entry or detainer where the rental value is one hundred dollars or

less per month, and where the whole amount of damages claimed is one thousand dollars or less, and in cases to enforce and foreclose liens on personal property where the amount of such liens or the value of the property is one thousand dollars or less, and in all criminal cases [including high grade misdemeanors]."

Does this language confer upon a municipal court jurisdiction over high grade misdemeanors committed in any part of the county within which the court is located or only over such offenses when they are committed within the limits of the city in which the court sits? As indicating that only a strictly local jurisdiction was intended to be conferred, it is to be observed that the grant of jurisdiction over the misdemeanors made in the constitution is coupled, in the same sentence, with a grant of jurisdiction over civil cases, including actions as to real property, and particularly over actions of forcible or unlawful entry or detainer. These latter actions—those affecting real property generally —are local in character (Code Civ. Proc., sec. 392), and although the section cited, strictly speaking, makes them local as to county only, the legislature has heretofore regarded actions of entry or detainer, especially, as local in a more restricted sense. In the legislation (Code Civ. Proc., secs. 113, 1163) vesting a concurrent jurisdiction in such cases in the justice's courts and in superior courts, the jurisdiction of the former is limited to the township over which each justice presides. And it is to be noted in this connection that actions of entry and detainer were the only real actions over which justice's courts were given jurisdiction. These enactments of the legislature, venerable in their age and therefore well-known to the public, furnish an aid to the construction of the constitution. It must be assumed, we think, that the people had them in mind in reframing the organic law. We think, therefore, that the criminal jurisdiction conferred upon the municipal courts by the constitution is strictly local as to each court, that is, that under the grant only those offenses are cognizable by it which are committed within the limits of the municipality in which the court was created and in which it sits. In a grant of jurisdiction to a court named as the municipal courts are, with the direct and positive provisions which the constitution contains as to their location—as to the terri-

toriality within which they may exist—it can hardly be supposed that the people could have intended an exercise of an extraterritorial jurisdiction without saying so expressly. This statement must be true, especially, as it seems to us, under the form in which the grant of criminal jurisdiction is made. It accompanies a grant of civil jurisdiction which, in part, at least, is strictly local to each city in which a municipal court exists.

[4] Where a grant of jurisdiction over various matters is made by a single sentence, and the jurisdiction over some of them is necessarily local, it would appear that the entire grant confers only a local jurisdiction, unless it be specifically provided in the grant that as to some of the matters mentioned an exercise of extraterritorial jurisdiction is intended. This conclusion is apparently not in accord with the views of a late text-writer. He refers to section 11 of article VI of the constitution as containing a ''general grant of jurisdiction in terms unlimited territorially'' (Tuttle on Cal. Mun. Courts, sec. 37, p. 72), and the reference is made in such a connection as to induce the view that the author's purpose is to concede a county-wide jurisdiction to municipal courts solely for the reason that the constitution does not expressly provide that the jurisdiction granted is intra-city, although he hints at a different possibility elsewhere (sec. 42, p. 87). We have shown that at least a part of the jurisdiction granted is local to cities in which municipal courts may be created, and that fact, with the consequences which flow from it in a construction placed upon the entire grant, would seem to meet the suggestion made by the author in question. Irrespective of this consideration, however, we think the author's view is incorrect upon general principles.

[5] That part of the jurisdiction conferred upon the municipal courts by section 11 of article VI, not taken from the justices' courts, formerly was vested in the superior courts, which are left by the constitution to exercise a higher jurisdiction than the municipal courts. This is evident from the fact that the amount limiting the jurisdiction of the latter courts in civil cases, and the grade of offenses by which their jurisdiction is limited in criminal cases, are both below the limits prescribed for the superior courts, and by the further fact that the superior courts are

to entertain appeals from the municipal courts. The latter courts are, then, inferior to the superior courts. Under such circumstances it seems that a grant of jurisdiction to the municipal court, which jurisdiction formerly resided in the superior court, must be strictly construed, and that, therefore, the failure of the constitution to specify the territorial limits of jurisdiction operates as a restriction of the grant contained in it. Under *Green* v. *Superior Court, supra,* whatever jurisdiction is granted by the constitution to the municipal courts is exclusive of the jurisdiction formerly vested in the superior court. The grant in section 11 of article VI doubtless comes within the meaning of the clause "otherwise provided for," contained in section 5. Upon the authority of the case cited the jurisdiction granted by section 11 is doubtless exclusive within the city limits of each municipality within which a municipal court is established; but we think the decision goes no further, for the reasons already stated, and because no question as to territorial jurisdiction was involved in it. To extend the effect of the case beyond the point indicated would be to violate a well-established proposition of law. "A court is not ousted of the jurisdiction which it possesses over a subject by a subsequent legislative enactment conferring jurisdiction on another court over the same subject, unless such an intention is plainly manifested either by the words of the statute or by a necessary implication therefrom" (15 C. J. 1131); and it is a familiar rule that "the general principles governing the construction of statutes apply also to the construction of constitutions" (12 C. J. 699). The grant of jurisdiction contained in section 11 is "subsequent" to the grant to the superior court contained in section 5, for in that respect the latter section has been in the same form for many years. The grant contained in section 11 was made at the general election of 1924.

[6] The question of which we have just made disposition is not free from difficulty, by any means, but we now come to one which is yet more troublesome. Did the people, by the clause to the effect that "the legislature shall provide by general law . . . for the jurisdiction" of municipal courts "except in the particulars otherwise specified in this section," contained in section 11 of article VI of the constitution, intend to empower the law-making body to provide for

the exercise of jurisdiction over misdemeanors committed in the territory of a county which lies outside the limits of cities in which municipal courts are created? As we have already discovered, the people themselves, by the constitution, have granted to the municipal courts a jurisdiction which is strictly local to the city in which each of those courts is established. Here is the stepping-stone to which we have alluded on an earlier page. As the people so limited their grant, did they intend that the legislature should confer upon the new courts an extraterritorial jurisdiction? The very form of the question indicates to some extent that they did not, but various other considerations are to be weighed before the question is finally answered. If the grant of jurisdiction contained in the constitution were not clogged with the limitation which we see in it, the question before us might take on a different aspect. The courts have placed a construction upon section 1 of article VI of the organic law which appears to support the view that the legislature has power to confer upon municipal courts a county-wide jurisdiction. That section provides that ''The judicial power of the state shall be vested in'' certain courts, including ''such inferior courts as the legislature may establish in any incorporated city or town . . . or city and county.'' To the list of courts contained in the section there was added, by amendment adopted in 1924, ''such municipal courts as may be established in any city or city and county.'' Prior to this amendment the section had stood unchanged, in all respects material to our present inquiry, since the adoption of the constitution. The supreme court has seen in the section, not a mere designation of the courts which may be established in the different parts of the state, each perhaps with a jurisdiction limited territorially to the city, town, or city and county within which it is created, but a list of courts for each of which the legislature may prescribe a jurisdiction extraterritorial to the municipality ''in'' which it is established. This construction seems to have arisen from the fact that the constitution reads that the judicial power *of the state,* not of a certain municipality in particular instances, shall be vested in the city courts contemplated by the provision, along with the other tribunals named in it, and was apparently forecasted in *People* v. *Cobb,* 133 Cal. 74 [65 Pac.

325], and perhaps in other cases, although it is not there directly declared. The construction is, however, directly announced in a later case. In the opinion there rendered the court referred to section 103 of the Code of Civil Procedure, which in part then provided (Stats. 1905, p. 49; Stats. 1907, p. 191), as it does now, that city justices of the peace ''shall have the same jurisdiction, civil and criminal, as justices of the peace of townships and township justice's courts.'' In order that the effect of the decision may be appreciated, it becomes necessary to refer to the language of section 1425 of the Penal Code to the effect that ''justice's courts have jurisdiction of the following public offenses committed within the respective counties in which such courts are established,'' the particular offenses being then named. It is to be noted that, in addition to the language of section 103 of the Code of Civil Procedure above quoted, section 1425 of the Penal Code is found in a ''Title'' which is headed ''Proceedings in Justices' and Police Courts and Appeals to Superior Courts'' and in a ''Chapter'' headed ''Proceedings in Justices' and Police Courts.'' In the opinion now under examination the supreme court, after referring to section 103 of the Code of Civil Procedure, said: ''Justices of the peace are part of the constitutional judicial system of the state, having concurrent jurisdiction with superior courts in certain matters expressly given by the Constitution (article VI, sec. 11), and also having such jurisdiction in civil and criminal cases as is given by the general laws of the state to all justices of the peace. In this regard there is no distinction whatever between township and city justices. . . . A city justice is simply a part of this general state system, elected for a certain subdivision thereof. It is immaterial in this connection that the legislature has attempted to confer upon city justices an additional jurisdiction in matters peculiar to the city, such as cases arising from violations of municipal ordinances, etc. The Constitution in terms provides that the legislature shall determine the number of such justices of the peace to be elected in townships, incorporated cities and towns, or cities and counties, and shall fix by law the powers, duties and responsibilities of such office. (Art. VI, sec. 11.)'' (*Graham* v. *City of Fresno*, 151 Cal. 465 [91 Pac. 147].) The case cited should be read in connection with *In re Kaster*, 52

Cal. App. 454 [198 Pac. 1029], and *In re Kaster,* 185 Cal. 647 [198 Pac. 1031], which plainly decide that the legislature may confide to township justices' courts a jurisdiction over offenses committed in any part of the respective counties in which such courts sit. The effect of all three of these cases, under section 1 of article VI of the constitution, if that section alone be considered in its application to the new municipal courts, is obvious. By the amendment of 1924 the last-named courts were included in the list of tribunals specified in the section. In them a part of the judicial power "of the state" is now lodged. If we consider section 1 alone, under the cases cited, we must conclude that the legislature has power to confer upon municipal courts a jurisdiction over offenses committed anywhere in the counties in which they respectively sit. But section 1 cannot be considered alone. We must reckon with section 11 of the same article. Section 1 itself makes no grant of jurisdiction. Section 11 does, but the grant contemplates only a jurisdiction, as to each municipal court, over offenses committed within the city in which the court sits and in which it exists. May the legislature now grant to municipal courts a county-wide jurisdiction, under section 1 of article VI, or is the power to be exercised by that body controlled by the provisions of section 11 only, with such limitation as is imposed by the nature of the grant of jurisdiction contained in the section itself? And in answering the question it must be remembered that section 11 reads that the legislature may provide for the jurisdiction of such courts "except in the particulars otherwise specified in this section." Here arises another question, Does this language import that the grant as to other particulars may include all the jurisdiction, territorially, grantable to justices' courts under section 1?

At this point in the discussion we are called upon to consider a late decision of the supreme court in a prohibition proceeding, announced under a condition of affairs now to be stated. Section 11 of article VI of the constitution contains this provision: "In any city . . . where such municipal court has been established, and in townships situated in whole or in part in such city . . . there shall be no other court inferior to the superior court except as herein provided," the evident purport of the language being that in the territory described there should be no

court inferior to the superior court except a municipal court. A municipal court was established in the city of Long Beach, and at the time of its creation a certain township lay partly within and partly outside the corporate limits of the city. The question was presented to the supreme court whether, under the language of the constitution last above quoted, the existence of the justice's court which had theretofore exercised jurisdiction within the township in question was terminated. The supreme court determined that the township court continued to exist, but that its powers within the city were at an end. The decision limited the territorial jurisdiction of the justice to that portion of the township lying outside the limits of the municipality. The conclusion was reached and is expressed in the following language: ''Reading said constitutional amendment as a whole it is manifest that its purpose was to provide for the organization and functioning of so-called municipal courts within the territorial limits of such cities and cities and counties as possessed the requisite population therefor and as should by the ways provided therein conclude to embrace its benefits, the municipal courts to be thus established to be confined in some respects as to their jurisdiction and functions to the territorial limits of the municipalities thus resolving to establish the same. It was a matter of public political record and history of which the framers of this amendment apparently took notice that in the course of establishing such municipal courts in such municipalities cases would arise where townships with their already established justices' courts would be found to lie partly within and partly without the prescribed limits of such municipalities, and which would as to that portion of the area of such townships as lay within the boundaries of such municipalities be affected by the action of the latter in resolving to bind themselves within the terms of said amendment and that as to such portions of such townships thus to be affected the provisions of said amendment should be operative. But it nowhere appears from said amendment when considered as a whole that it was the intent of those who framed it to disturb to the extent of destroying the judicial organization within those portions of such affected townships as lay outside of the limits of those municipalities which had decided to set up municipal courts within their

said limits. To so interpret the particular language of the portion of said amendment upon which the petitioner relies and which is above excerpted, would be to give to the amendment as a whole the effect of either taking away from the inhabitants of the portion of such townships as lay without the bounds of such municipalities their already established justices' courts, leaving them without tribunals for the institution and trial of causes within the jurisdiction of such court, or of *extending the jurisdiction of* the municipal courts of contiguous cities over such outlying territory, neither of which results is thinkable as within the intent of the framers of this amendment to the Constitution, since to give it such an interpretation would be to take away from the inhabitants of such outlying territory their already established system of justices' courts and township officers by the vote of the electorate of an incorporated municipality of which they form no part, and to substitute in place thereof a system of municipal courts in the establishment of which and in the selection of the judges and other officers of which they would have no vote or voice." The italics are those of the supreme court. After quoting from various cases dealing with questions of statutory and constitutional construction the court proceeds: "Having in mind these principles and applying them to the amendment as a whole and to the particular language in the portion thereof above quoted and upon which the petitioner places his main reliance, we are of the opinion that the phrase therein reading, 'in townships situated in . . . part in said city or city and county, there shall be no other court, etc.,' should be interpreted to mean that it was the intent of the framers of said amendment to provide that in such part of such townships as would be found to be situated within such city or cities establishing such municipal court there should be no other inferior courts than such municipal courts as were to be provided therefor under the terms of said amendment. Such an interpretation would leave said amendment entirely free from the absurdity and confusion which would result from placing the meaning upon said clause for which the petitioner contends." The opinion then refers to a statute passed by the legislature and touching the subject of municipal courts, and says further: "It thus appears that the

legislature by the foregoing provisions in said act has placed upon the constitutional amendment in question precisely the interpretation which in our opinion should be given to its terms. It would seem to follow from the foregoing considerations that within that portion of Los Angeles township lying outside of incorporated territory and wherein the original case against said petitioner arose, the justice's court of said township still continued to exist and function. It is true that it did so within restricted territory in view of the action of the city of Long Beach in electing to organize a system of municipal courts within its own territorial limits, but the original jurisdiction of said justice's court remained otherwise unimpaired. And, if this conclusion be correct, it would seem to further follow that the fact, if it be a fact, that the city of Long Beach had or had not succeeded by amendment of its charter in bringing itself within the terms of the constitutional amendment and in thus establishing a system of municipal courts within its territorial limits, would be immaterial to the determination of this cause, since the offense with which the petitioner stands charged was committed in a portion of Los Angeles township which was never within the territorial limits of said city of Long Beach." (*Bakkenson* v. *Superior Court,* 197 Cal. 504 [241 Pac. 874].)

We have studied this case with the utmost care, in an endeavor to see in it no departure from the reasoning upon which is based the decisions in *Graham* v. *Superior Court, supra,* and in the two cases *In re Kaster, supra,* in so far as it may be contended that those decisions affect the jurisdiction of municipal courts, but without avail. In its late decision the supreme court declares that it is intended by the constitution that the municipal courts are "to be confined in some respects as to their jurisdiction and functions to the territorial limits of the municipalities . . . resolving to establish the same." Owing to the use by the court of the qualifying phrase "in some respects" this passage itself presents no great difficulty. It is only when later expressions of the court are examined that a conflict with the earlier cases, if it be sought to apply them to the municipal courts, seems to appear. One of these later expressions is that in which the court says that the contention of the petitioner leads to one or the other of two unthinkable

results. One of these results is that of *extending the juris-
diction*—and the court is careful to italicize the words—
"of the municipal courts of contiguous cities over such out-
lying territory." The court says that neither of the results
mentioned is thinkable, because to allow them would be
"to take away from the inhabitants of such outlying ter-
ritory their already established system of justices' courts
and township officers by the vote of the electorate of an
incorporated municipality of which they form no part, and
to substitute in place thereof a system of municipal courts
in the establishment of which and in the selection of the
judges and other officers of which they would have no vote
or voice." The latter part of this reasoning—that relating
to "the selection of the judges and other officers"—is neces-
sarily, as it seems to us, in conflict with the conclusion
reached in *Graham* v. *Superior Court* and in the cases *In
re Kaster*, if it be sought to apply those cases to municipal
courts. We need not pause to cite the statutes under which
city and township justices are to be elected by the people
of the cities or townships within which, respectively, they
are to sit. Under the rule of the case last cited any citizen
of a county—and that of course means, in the last analysis,
every citizen of a county—may be subjected to the juris-
diction of any and every city and township justice in the
county, in the election of none of which he has had a vote
or choice, except that one or those who occupy the bench
in his own city or township. We have above referred to
the statutes under which justices are limited to the terri-
tory of their respective townships or cities in the exercise
of jurisdiction in actions of entry and detainer, and to the
understanding of that rule which permeates the community—
the state. Doubtless, under the cases last cited, the legis-
lature has the *power* to confer upon justices' courts a
county-wide jurisdiction in such actions. The entire effect
of those cases, as bearing upon the various instances just
stated, seems to be obliterated by the reasoning of *Bakken-
son* v. *Superior Court*, when it is sought to apply them to
municipal courts.

The remark in the opinion in *Bakkenson* v. *Superior Court*
to the effect that, under the contention of the petitioner,
the people of the portion of the township lying outside the
limits of Long Beach might be deprived of their system

of courts "by the vote of the electorate of an incorporated municipality of which they form no part" requires a particular consideration. The courts contemplated by the decisions in *Graham* v. *Superior Court* and in the cases *In re Kaster,* are created by the legislature, a body which represents the entire electorate of the state. As to the municipal courts the situation is quite different. In the establishment of such courts the people of the state at large have no voice, and in that fact lies a very cogent reason for the conclusion reached by the supreme court in its late decision. A *system* for the creation of municipal courts has been established by the people of the state by means of the constitution, just as they have established a system for the adoption of freeholders' charters by cities, but a municipal court may not be erected, nor may a charter be adopted in any city except at its own behest. The constitution provides, as to municipal courts, that such a tribunal may be established in a city when its charter, or an amendment thereto, so provides, or when its people shall so vote at an election (art. VI, sec. 11). The actual establishment of a municipal court therefore takes on the character of a "municipal affair" as that term is employed in the section of the constitution relating to the adoption of freeholders' charters. These observations, somewhat amplifying the language of *Bakkenson* v. *Superior Court,* show a vast difference between justices' courts and municipal courts in a respect which is most material to the question now before us, and are persuasive of a conclusion that the municipal courts were intended to exercise but an intra-city jurisdiction.

Another consideration is closely allied with the point touched upon in the last preceding paragraph. Townships are political subdivisions of a county (Pol. Code, sec. 4015), just as counties are political subdivisions of the state. Added together, townships cover the entire state. In this circumstance there would seem to exist a warrant for a grant of a county-wide jurisdiction to justices' courts. If an offense is committed in a certain township, and there is any sound reason why a charge based upon it should not be tried there, another township is near at hand, the jurisdiction of which may be invoked for a trial of the charge. The situation is different as to cities, and especially as to cities of over forty thousand inhabitants governed under

freeholders' charters—these being the only cities within which municipal courts may be established under the constitution. Cities are not together continuous and connected political subdivisions of the state. They are distinct individual entities. Cities, and especially charter cities, are in a sense independent political organizations, each practically *imperium in imperio* (Const., art. XI, sec. 8). Charter cities of more than forty thousand inhabitants are few and far between and in many, perhaps in a majority, of the counties there is none. Under all these circumstances a peculiar situation would arise if the contention of appellant were upheld. In many of the counties—those in which there can be no municipal courts—the superior courts would still possess jurisdiction over high grade misdemeanors. In those counties in which municipal courts are established the same jurisdiction would rest in the single municipal court, or in the few municipal courts in each, to the utter exclusion of the superior courts in those counties. It cannot be supposed that the people, by the constitution, would authorize such an anomalous condition of affairs to be created by the legislature except by express language intended to vest such an authority. It is therefore quite logical upon these considerations to see in the provisions of the constitution as to municipal courts an intention upon the part of the people to authorize the establishment of strictly city courts.

We conclude that the legislature was without power to give to municipal courts a county-wide jurisdiction over high grade misdemeanors, and that such jurisdiction, when invoked as to offenses committed outside of the territory of cities in which municipal courts have been established, rests now, as it did formerly, in the superior courts.

In Criminal No. 1382 the judgment is affirmed. In Criminal No. 1460 the writ is discharged and the prisoner is remanded to custody.

Craig, J., and Thompson, J., concurred.