## DANIEL WEBSTER v. DANIEL B. DENISON.

*The effect of a confession of judgment and sale of property upon execution, by agreement between the creditor and debtor, to create a lien merely upon the property to secure the debt, considered.*

A creditor cannot make use of a confession of judgment, by his debtor, and a sale of the debtor's property on execution, in accordance with a secret agree ment between them, to create a lien merely upon such property to secure the debt, and still permit the property, after such sale, to remain in the hands of the debtor.

The law does not recognize any such sales on executions, as conditional sales, or defeasible sales, or sales vesting a title, liable to be defeated by redemption.

TRESPASS for a yoke of oxen. Plea, the general issue, and notice that defendant, as duly authorized by two writs of attachment, against one John R. Morse, took said oxen as the property of said Morse, and that judgments were duly rendered in said suits and executions issued, and said oxen thereon legally sold. Trial by jury.

On the trial, the plaintiff offered testimony tending to prove, that on the 31st day of January, 1846, the said John R. Morse was indebted to him on book account, in the sum of $21 43, and that at that time the plaintiff let said Morse have $19 00 in money, for both of which sums, amounting to $40 43, the said Morse executed his promissory note to the plaintiff, payable on demand, with the understanding between them, that said Morse should confess judgment on said note, and that execution should issue thereon, and that a certain pair of oxen, then owned by said Morse, should be taken, and regularly sold at sheriff's sale, on said execution, and that plaintiff should bid them off, and so become the owner thereof, but that they should continue to be used by said Morse.

That pursuant to this understanding, said Morse did confess judgment on said note, and execution issued, and said oxen were taken and sold thereon, at regular sheriff's sale, to the plaintiff, for $45 00, who let them go back into the possession of said Morse, and they remained in his possession until the fall of 1847, when the said Morse contracted to exchange them with one W. E. Pierce, for a pair of steers and the balance in money; but said Pierce, being informed by others that the plaintiff owned said oxen, he de-

Webster *v.* Denison.

clined the trade; that said Morse then procured the plaintiff to go and meet said Pierce, and a bargain was concluded between them, by which the plaintiff sold said oxen to said Pierce, for a yoke of steers and $35,00 in money, and the plaintiff then delivered said steers, as his property, to the said Morse, who kept them until they were taken by the defendant, as stated in his notice.

The defendant then offered testimony on his part, tending to prove that though said sale of said oxen to the plaintiff, by sheriff's sale, purported to convey to the plaintiff an absolute property therein, yet that in truth and in fact, there was a secret agreement and understanding between plaintiff and said Morse, when said note and confession were given, and as the inducement thereto, that plaintiff was to bid off said oxen, at said sheriff's sale on execution, and to hold them in trust for said Morse, who was still to have the use thereof, and yet not be subject to be taken by his creditors; and that said Morse was to have the right to repay what plaintiff had let him have for said oxen, and then to be the absolute owner.

The testimony also tended to prove, that plaintiff had received from said Morse various sums of money, and much more than to repay him therefor, before the taking by the defendant.

The defendant also offered in evidence the writs of attachment, judgments, executions and returns, mentioned in his notice.

The plaintiff then offered testimony, tending to prove that whatever money he had received of said Morse, he had applied and accounted for to said Morse, in a manner distinct and independent of these oxen; except the $35,00 received of said Pierce in exchange as aforesaid, and that the plaintiff claimed as his own, claiming to be the absolute owner of said oxen.

The County Court, June Term, 1852, — COLLAMER J. presiding,— charged the jury, that if from the testimony they found that the note and confession were made by Morse, and the sale of the oxen to the plaintiff on execution, took place under a secret agreement between Morse and the plaintiff, and that Morse was still to have a beneficial interest in the oxen, by having their use, and the right to still be owner, by paying the plaintiff the amount of said sale, it constituted such a secret trust as rendered said sale fraudulent and void, as to the creditors of the said Morse.

The Jury returned a verdict for defendant.

Webster *v.* Denison.

To the charge of the court as above stated, the plaintiff excepted.

*J. L. Edwards* for the plaintiff.

Where property is sold on execution, it is a question of *fact* to be left to the jury, whether there was fraud in the transaction—the fraud in law being taken away by the publicity of the sale. 2 Kent 519.

It will not be denied, that had Morse refused to agree to this transaction, it would have been valid as to creditors.

The plaintiff was legally and properly a bidder. Public notice had been given of the sale, as the law requires—the property was duly exposed for sale, so that not only Morse and the plaintiff, but all of Morse's creditors, if there were any, might have attended and and bid upon the property, to prevent fraud or waste for want of bidders.

The property could well go back into the possession of Morse, without being subject to attachment by Morse's creditors. *Bates* v. *Carter*, 5 Vt. 602.

The transfer of the property in this case was as the law had pointed out. The transaction was notorious, and the *publicity* of the sale takes away the fraud in law, and it becomes a question of fact for the jury, whether or not there was fraud in this transaction. 2 Kent 523.

The plaintiff having the legal title, by transfer at the sheriff's sale, he could legally and rightfully make a conditional sale of the property to Morse or any one else. These sales have been repeatedly recognized, and the property holden until the last dollar was paid. *West* v. *Bolton*, 4 Vt. 558. *Bradley* v. *Arnold*, 16 Vt. 382.

The validity of the purchaser's title at sheriff sale, does not depend upon any thing after the sale. *Gates* v. *Gaines*, 10 Vt. 346.

*J. Cooper* for the defendant.

1. The jury found, that by a *secret agreement*, Morse had an interest in the oxen, and that the plaintiff, by his claim, endeavored to shield them from Morse's creditors. The law is that *all* conveyances of goods and chattels in trust, for the use or benefit of the person conveying them, or made to delay, hinder or defraud creditors, are void. *Worsely et al.*, v. *Demattas et al.*, 1 Burr. 467.

*Cadogan et al.,* v. *Kennett et al.,* 2 Cowp. 432. *Twine's Case,* Dunlap's Coke's R. 62. 2 Kent's Com. 515. Walk. Intro. to Am. Law, 399.

1. Secrecy, and the continuing in possession of the goods, by the vendor, are usually the most prominent badges of fraud. 1 Swift's Dig. 267. *Wardell* v. *Smith et al.,* 1 Campb. 332. *Kidd* v. *Rawlinson,* 2 Bos. & Pul. 59. *Taintor* v. *Williams,* 2 Conn. 271. *Talcot* v. *Wilcox,* 4 Conn. 134. *Swift et al.,* v. *Thompson,* 4 Conn. 63. *Chapin* v. *Pease,* 5 Conn. 69. *Boardman* v. *Keeler et al.,* 1 Aik. 158. *Weeks* v. *Weed,* 2 Aik. 64. *Fletcher* v. *Howard,* 2 Aik. 115. *Jackson* v. *Brownell,* 3 Caine's, 222. *Whipple* v. *Foot,* 2 Johns. 418. *Burnell* v. *Johnson,* 9 Johns. 243.

3. A secret trust, upheld as an absolute sale, to defraud creditors, is the very case provided for by statute, and such fraud vitiates the contract, *Morris* v. *Gill,* N. Chip. 63. 1 D. Chip. 49. *Blake* v. *Howe,* 1 Aik. 306.

The opinion of the court was delivered by

REDFIELD, CH. J. The only question in the present case is, whether a creditor is at liberty to make use of a confession of judgment, by his debtor, and a sale of his personal property upon execution, to create a lien merely upon such property to secure the debt. For if that can be done, we do not perceive why this was not fairly done.

It has often been held, that an absolute conveyance of property from a debtor, owing other debts at the time, to secure one creditor, and which is represented by the parties and justified as being an actual absolute conveyance of the property, is, for that reason alone, void. *Barker* v. *French,* 18 Vt. 460, and *French* v. *Barker,* in a subsequent volume.

So it is always regarded as fatal to the character of a sale of personal property, by the debtor, to his creditor, in payment of his debt even, if he owe other debts at the time, and still hold a secret confidential interest in the property, which entered into the original sale, as one of its elements or considerations, and which is agreed to be kept secret.

And it seems to us, that the use attempted to be made of this judgment and execution sale, is liable to most of the objections above stated, and to others, perhaps.

Webster *v.* Denison.

1. It is upon its face, and in its very nature, an absolute sale of the property. It can be nothing else. The law does not recognize any such sales on executions, as conditional sales, or defeasible sales, or sales vesting a title, liable to be defeated by redemption. This use of such a sale was therefore, in the strictest sense, a perversion of the legitimate use of the proceeding.

2. If any such trust existed, as the testimony tended to show, and the jury under the charge must have found, it was of necessity, secret, and so, fraudulent. No man would expect any such trust, or equity of redemption. It seems here that this trust was the consideration and moving cause of the note and confession, on the part of the debtor. Without that, very likely he would not have given the note or confession. And, as between the parties, it seems questionable, whether the creditor could, in equity, have maintained his absolute title to the property.

3. This is applying the privilege of letting property, sold on execution, remain in the debtor's possession, to defeat the very rule to which it was intended as an exception only, for the ease of the debtor. For if every kind of perversion of the proper purpose of the sale is to be allowed, with impunity, provided only that it be done under the shield of a sheriff's sale, the court may as well at once abolish the rule, as to give an exception so wide in extension, as to include all cases coming within the rule itself.

The rule of law, that an absolute deed of land, or bill of sale of personal property, if agreed to be merely a mortgage, or pledge, is good for that, as against the creditors of the vendor, is peculiar to this State; every where else, such a trust, or confidence, is regarded as so far inconsistent with the deed, as to destroy its operation as a mere security.

But in a case of this kind, the vendee makes his deed void, by claiming an absolute title, even on the trial of his action, for the security. *Barker* v. *French, supra.*

And the present case goes even beyond the limits of our own decisions upon this subject. Here the conveyance is *incapable* of conveying any other but an absolute title. If it were to have any other operation, by covert or latent understanding, between the parties, it would tend constantly to mislead others. For no one would be expected to inquire, whether a sale upon execution was absolute, since *ex vi termini*, it imports that, and nothing else.

The proper distinction in the law, between *bona fides* and *mala fides*, is, that the former requires the thing to be, in fact, just what it purports to be. And nothing could be farther from the simple definition of *bona fide*, than to have an absolute sale of property, upon execution, voidable, by reason of some secret understanding between the parties, to create a mere lien. For, if the thing is valid between the parties, (and it must be, if it is any where) then a court of equity may be invoked to give the debtor a right of redemption. The extension of the exemption of sheriff's sales from the general requisites of other sales, as to change of possession, to cases of this kind, would be liable to very great abuse, and would, we think, be likely to invite it.

Judgment affirmed.