[S. F. No. 9106. In Bank.—November 21, 1919.]

WORSWICK STREET PAVING COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[S. F. No. 9109. In Bank.—November 21, 1919.]

THE EMPLOYERS' LIABILITY ASSURANCE CORPORATION, etc. (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT—DEATH OF LABORER ENGAGED IN TRENCH EXCAVATION—EMPLOYEE OF SUBCONTRACTOR—FINDING SUPPORTED BY EVIDENCE.—In these proceedings in review assailing an award of compensation for the death of a laborer who was killed while engaged in excavating a trench, the finding of the commission that the deceased at the time he was injured was an employee of the subcontractor who was doing extra work at cost, is supported by the evidence.

[2] ID.—INSURANCE POLICY—CONSTRUCTION OF—EXCEPTION OF SEWER CONSTRUCTION WORK.—An insurance policy issued by an indemnity company to a street-paving company does not cover liability for

the death of a laborer in the employ of the paving company while engaged in trench excavation work, where the policy contains a proviso expressly excepting the work of construction of sewers.

[3] Id.—Insurance Policy — Uncertainty — Construction. — Where provisions of a policy of insurance are not free from uncertainty, they are to be construed most strongly against the insurer who has framed the contract and caused the uncertainty to exist.

[4] Id.—Making New Contract for Parties—Commission Without Power.—The Industrial Accident Commission has no power to make a new contract between an employer and its insurance carrier.

[5] Id.—Compensation for Injuries—Award Against Other Than Immediate Employer—Provision of Act Unconstitutional.—Section 25 of the Workmen's Compensation Act of 1917, in so far as it purports to authorize the Industrial Accident Commission to make any award on account of injury to an employee against any person other than his immediate employer, or the insurance carrier of his immediate employer, is invalid as being without constitutional sanction.

[6] Id.—Constitutional Amendment—Inapplicability to Prior Accident.—The amendment of section 21, article XX, of the constitution, adopted in November, 1918, relative to enactment of workmen's compensation laws, is inapplicable to an accident which happened some months before the adoption of the amendment.

APPLICATION for a Writ of Certiorari to review an award of the Industrial Accident Commission. Annulled in part, affirmed in part.

The facts are stated in the opinion of the court.

Everts & Ewing, W. E. Simpson, Redman & Alexander and Duke Stone for Petitioners.

A. E. Graupner and Warren H. Pillsbury for Respondents.

ANGELLOTTI, C. J.—These are proceedings in review by different parties assailing an award in favor of dependents of one Selso Morales, who on April 9, 1918, was fatally injured while in the course of his employment, his injuries resulting in death the same day. He and several others were engaged in excavating a trench, when one side thereof caved in, crushing him and three other workmen. It is not disputed that the injury arose out of and in the course

of employment and was proximately caused thereby. Nor is there any question as to the correctness of the award in so far as amount and beneficiaries are concerned. The only questions are as to who is liable for the payment thereof.

The award was made against the Worswick Street Paving Company and the Employers' Liability Assurance Corporation, execution against the latter being stayed until execution against the former is returned unsatisfied. The findings of the commission upon which such award was made were, so far as material to the questions here presented, substantially as follows: The Fresno Natatorium Company entered into a contract with one W. W. Taft, under which the latter was to construct for the company a conduit for the drainage of an indoor swimming-tank of the company in the city of Fresno. Taft sublet to the Worswick Street Paving Company the work of excavation, refilling and resurfacing of the trench necessary for the construction of the conduit, thus making such Worswick Company the subcontractor for such work. On reaching the depth required by said contractor of a portion of said trench, it was found necessary to make the same deeper, and this extra work the Worswick Company agreed to do for Taft at the actual cost of the labor necessary therefor. While this extra work was being done by the Worswick Company the accident occurred. The deceased, Morales, was engaged in this work as an employee of the Worswick Company. The insurance carrier of the Worswick Company was the Western Indemnity Company, but the policy of insurance expressly excluded all employees engaged in sewer construction, and the conduit was a sewer, with the result that the insurance carrier was not liable and the Worswick Company, the immediate employer of deceased, not insured against liability as to this accident. The petitioner Employers' Liability Assurance Corporation was the insurance carrier for the original contractor, W. W. Taft, and liable for any sum for which Taft might be liable on account of said accident. The theory of the award, upon these findings, was that the Worswick Company, as immediate employer, was primarily liable, and that inasmuch as such company did not maintain compensation insurance covering the liability, the insurance carrier of the original contractor, Taft, viz.: The Employers' Liability As-

surance Corporation, was also liable, in view of the provisions of section 25 of the Compensation Act (Stats. 1917, p. 853). Assuming the findings to be supported by the evidence, the award thus made was in strict conformity with the provisions of section 25 of the Compensation Act. As against the Employers' Liability Assurance Corporation the award rests wholly on the provisions of said section purporting to authorize, under certain circumstances, an award against others than the immediate employer and his insurance carrier.

The award is assailed by the Worswick Company upon two grounds, the first being that the deceased employee was not the employee of said company at the time he was injured; and the second being that, assuming he was such employee, its insurance policy issued to it by the Western Indemnity Company covered the liability, with the result that the award should have been against the Insurance Company, its insurance carrier, instead of against the Worswick Company.

[1]  As to the first ground, consideration of the record discloses no warrant for holding that the finding of the commission is without sufficient support in the evidence. As we have seen, Taft, the original contractor, sublet the excavation work for the trench to the Worswick Company. There was a written contract providing for the doing of this work according to the plans, which showed the depth of the proposed trench at all points. After the excavation had been fully made, according to these plans, for a portion of the way only, and before the excavation had been completed the whole distance, it was discovered that· as to the portion already completed, a sufficient depth had not been provided by the plans, and that a lower depth must be reached. This necessitated additional work not embraced in the existing contract between Taft and the Worswick Company, and it was in the doing of this work that the accident occurred, and the claim of the Worswick Company is that Taft himself did this work with employees of the company loaned to him for the purpose, and that he was consequently the immediate employer with reference to such work. Taft took the matter of this work up with Mr. Bader, the president and manager of the Worswick Company. There was ample testimony to

support a conclusion that it was then orally agreed between
them that the Worswick Company would do this extra work
for Taft for the exact cost to it of the labor employed there-
on, and that the work was being done under this agreement,
by the Worswick Company alone, by its own employees, at
the time of the accident.    The contention to the contrary
appears to us to be without any substantial basis.    Taft's
testimony is clear and explicit to the effect that Mr. Bader
said he would have to have extra pay for the extra excava-
tion, that he, Taft, assented, and that the agreement was
then made and the work proceeded with thereunder, he
having nothing to do therewith except that he gave to the
company's foreman the figures showing the changes in the
grade.    In the last analysis the claim of the Worswick Com-
pany appears to be based on the fact that for the extra work
the company was to charge, and did charge, only for the
cost of the labor furnished, without any percentage or
profit, which, under the circumstances, appears to us to be
an entirely immaterial factor.    As to this, Mr. Bader was
asked why he did that extra excavation at cost and said:
"Well, for the first reason, it was a hazardous piece of work,
and I didn't know how much it would cost, and I would
rather do that work without any profit than to take a
chance on it to make some money."    Being then asked: "I
don't quite understand what you mean by 'taking a chance';
what chances were there to take?" he said, "Because it was
digging in the hardpan on the bottom of the ditch and it
was pretty hard to figure what that would cost."    All of
the work, original and extra, was done by employees of the
Worswick Company, under the immediate direction and con-
trol of Mr. Lobdall, the foreman of the Worswick Company,
under the supervision of Mr. Bader, and apparently Mr.
Taft exercised no supervision whatever in the matter, over
either men or work, and did not have the right to exercise
any such supervision, except that he did furnish what were,
in effect, the revised plans for the work, just as he had
furnished the original plans.    The extra work undertaken by
the Worswick Company was to further excavate the trench
to the depth shown by the revised plans, and Taft had noth-
ing whatever to do with the method used in reaching this
result.    The case is apparently simply one of a subcon-
tractor undertaking to do certain extra work for a specified

consideration, the consideration in this case being fixed as the exact cost of the work.

As to the second ground of attack, viz., that the insurance policy issued by the Western Indemnity Company covered the liability of the Worswick Company arising from this accident: The question thus raised is simply one as to the proper construction of a written contract between the Western Indemnity Company and the Worswick Company. So far as material here, the insurance policy provided as follows, italics wherever used being ours: The indemnity company agreed to assume and perform all obligations imposed upon the employer "named and described in Item 1 of the Schedule of Statements forming part hereof" by the Workmen's Compensation, Insurance and Safety Act, "for or on account of bodily injuries including death resulting therefrom suffered while this policy is in force by any employee of the assured . . . *in and during the operation of the trade, business or work herein described.*" The schedule of statements referred to and constituting a part of the policy contained several items. Item 1 gave the name of the assured as the Worswick Street Paving Company, its address as Fresno, California, and described it as a corporation. Item 2 declared that "the description of the assured's trade, business or work, place where such work is carried on, and estimated pay-roll of all employees for the period of the policy are given in the following table," and in the table, except for the place of work, referred for particulars to an indorsement attached. The indorsement originally attached when the policy was issued was similar, in so far as designation of the trade or business of the Worswick Street Paving Company is concerned, to an indorsement subsequently attached, dated November 12, 1917, and accepted and countersigned December 4, 1917, for the purpose of correcting the rates to conform with new schedule of rates approved by the insurance commissioner. The second indorsement was as follows:

"Indorsement.

"Date November 12th, 1917.

"In accordance with indorsement previously attached to undermentioned policy, the rates are hereby corrected to conform with a new schedule of rates approved by the insurance Commissioner of the State of California, and from

and after November 12th, 1917, Item No. 2 of the under-mentioned policy shall read as follows:

| Assured's Trade or Business | Rate per $100 of pay-roll |
|---|---|

State or Municipal Road or Street Making—including culverts not exceeding 10 ft. span:

#6042—All operations except quarrying and blasting........ .......... ................    2.99

> The first classification above includes the setting up and taking down of road making equipment and appliances at the place of work, and the operation of road making machinery or vehicles, with or without horses, or other draft animals, also the operation of trucks, traction engines and steam rollers or other vehicles in connection with the work of transporting material, merchandise and equipment to and from the place of work. For compensation coverage, the wages of all drivers and helpers, chauffeurs and their helpers and others engaged in connection therewith to be included in the pay-roll and subjected to the rates. If teams are hired by contract including drivers, then 50 per cent of the contract price of the teams shall be accepted in lieu of drivers' wages, and if automobile trucks are hired by contract including chauffeurs, then 25 per cent of the contract price of the automobile trucks shall be accepted in lieu of chauffeurs' wages.

#1621—QUARRYING...... .......... ........    6.84

#6280—BLASTING ............ ... ........    21.65

#5503—ASPHALT LAYING—street or sidewalk (including shop and yard) (not available for division of pay-roll in connection with State or Municipal Road or Street Making)—no grading, scraping or laying of concrete......... ........ ............    1.99

#4745—ASPHALT WORKS (shop and yard only) (Manual rate 3.93) Merit rate . . . . . . . . . . .   3.905

#5502—CONCRETE WORK—floors or pavements of artificial stone or concrete, not reinforced or self-bearing . . . . . . . . . . . . . . . . . .   1.99

#5500—PAVING—not otherwise classified (including yards) (not available for division of pay-roll in connection with State or Municipal Road or Street Making) (surfacing or resurfacing streets—no grading, scraping or laying of concrete.) . . . . . . . . . . . . . . . . . . . . .   1.99

#5210—CONCRETE WORK—piers, or abutments for bridges (not concrete bridges), retaining walls, water conduits (no tunneling) and other structures (no buildings, bridges, or dams). Pay-roll to include those engaged in making, setting up, and taking down forms, scaffolds, false work and concrete distributing apparatus, excluding all work in tunnels, subways or caissons, for which use proper classifications and rates. . .   4.53

#9078—COMMISSARY WORK—cooks, waiters and other employees engaged in furnishing board for employees in connection with manufacturing, lumbering or contracting risks (not exposed to mechanical hazard of such risks) . . . . . . . . . . . . . . . . . . . . . . . .   1.45

#8810—Clerical office force . . . . . . . . . . . . . . . . . . . .   .11

"Premium to be adjusted in accordance with terms of policy.

"All other terms and conditions remaining unchanged.

"Accepted.

"WORSWICK STREET PAVING CO.,   Assured.
"F. BADER, Pres.

"Attached to and forming a part (when countersigned and dated by an authorized Agent) of Policy No. CC—12153, issued by the Western Indemnity Company, Dallas, Texas, to Worswick Street Paving Co. of Fresno, California.

"Countersigned this 4th day of December, 1917.

"E. EDWARDS, Agent.

"E. R. LONG.
"Secretary."

A section of the policy styled therein variously as a "clause," "condition" and "paragraph," being denominated "F" was as follows:

"F: It is understood and agreed that if during the Policy Period there shall be any change in, or extension of trade, business, profession or occupation of the Assured as set forth in the Schedule of Statements of the Policy, or if the Assured make any structural alterations, additions or repairs, to his plant or buildings, or enter into any contract for the performance of any part of such work, or in case the Assured shall procure any work to be done wholly or in part by a contractor, and by or through him, by a subcontractor, then this Policy shall cover such operations, and the liability of the Assured under Section 30 of said chapter 176 as respects such work, and the Assured shall be liable for and pay to the Company the premium on account thereof calculated in the manner provided in Paragraph 'G' of the Policy, at the Company's rate or rates applicable to such work. The Assured shall furnish the Company a statement of the wages expended on account of such work, as is provided in Paragraph 'H' of the Policy, and in the event of his failure to do so one-third of the contract price of such work shall be deemed as wages earned by employees, and the Assured shall pay the premium thereon computed in the manner above specified, unless and until the Assured shall furnish proof satisfactory to the Company that all contractors engaged thereon were fully protected by Compensation Insurance in an Insurance Carrier covering their full liability under the said Compensation Act or Law, on all such work performed by the Assured while this policy was in force. Provided, however, that this clause shall not cover the operation of vessels, construction of sewers, tunneling, erection of structural steel or iron, and-or wrecking, and-or blasting."

It is manifest from the foregoing that the work being done was not covered by the policy, unless by force of the provisions of paragraph or clause "F" relative to a change in or extension of the trade, etc., of the assured as set forth in the schedule of statements of the policy. Except as affected by this paragraph or clause the policy was limited to injuries suffered by employees "in and during the operation of the trade, business or work herein described." That

"trade, business or work" was described as "State or Mu‑
nicipal Road or Street making—including culverts not ex‑
ceeding 10 ft. span." There is no warrant whatever for
holding that the work being done by the Worswick Company
under its contracts with the Fresno Natatorium Company
was in any sense of the words "road or street making," or
in any way incidental to such work. We entertain no doubt
that, except for paragraph or clause "F" the policy must
be construed as limited to operations in the trade, business,
or work of road or street making, and that the specifica‑
tions other than this general specification in the indorse‑
ment are simply specifications of various classes of work in‑
cidental to such road or street making, the object thereof
being to prescribe the premium rates applicable to the vari‑
ous classes. In other words, the work specified in these sub‑
specifications is covered by the policy only when done in the
prosecution of the business or work of road or street mak‑
ing. But even if this were not the case, none of these speci‑
fications includes such work as the Worswick Company was
doing here. The particular specification relied on, which
includes among other items the one of "water conduits," is
confined to "concrete work," the designations thereunder
being simply of various kinds of "concrete work."

[2] Coming then to a consideration of paragraph of
clause "F," we are satisfied that it could fairly be held suf‑
ficiently broad in its terms to include the work the Worswick
Company was doing, although the same was not done in
road or street making, were it not for the proviso at the
end thereof which expressly excepts certain kinds of work
from the effect of the paragraph or clause. This proviso is
"Provided, however, that this clause shall not cover the
operation of vessels, *construction of sewers,* tunneling, erec‑
tion of structural steel or iron, and‑or wrecking, and‑or
blasting." There is no force in the claim that the work in
which the company was engaged was not the work of con‑
structing a sewer. The conclusion of the Industrial Accident
Commission on this point was undoubtedly correct. Nor
can we see any foundation for the claim that the proviso is
limited in its application to the latter portion of the general
paragraph of clause "F." This claim is founded on the
use of the words "that this *clause,*" it being urged that the
term "clause" does not include the whole of "F," or at

least that the provision may be reasonably so construed. We think that a consideration of the policy shows no other possible reasonable construction of the term "clause" in the connection in which it is used than as meaning the whole of the part of the policy designated as "F." It may properly be noted that such portion is designated as "Clause 'F'" in the very next paragraph or clause (G), as is "G" so designated in the very first line of the policy. It seems to us also that any other construction would render the proviso practically without point. The clear intention of the whole paragraph, clause, or condition designated "F" was to so enlarge the coverage of the policy as to include any change in or extension of the business described in the policy, provided always that such enlargement should not in any event be held to include work expressly specified as excepted.

[3] We have had in mind in considering this policy the well-settled rule to the effect that where provisions of such a contract are not free from uncertainty, they are to be construed most strongly against an insurer who has framed the contract and caused the uncertainty to exist. But we are satisfied that it must be held that there is no ambiguity or uncertainty in the policy before us with relation to the matters we have discussed. The provisions involved are plain and unambiguous, and susceptible to only one reasonable construction. [4] The Industrial Accident Commission was without the power to make a new contract for the parties, and its conclusion that the work being done by the Worswick Company was not covered by the policy was correct.

The Employers' Liability Assurance Corporation, found to be the insurance carrier of the general contractor Taft, assails the award in so far as it runs against it, upon the ground, among others, that in so far as section 25 of the Workmen's Compensation Act purports to authorize the Industrial Accident Commission to make any award on account of injury to an employee against any person other than his immediate employer, or the insurance carrier of his immediate employer, it is invalid as being without constitutional sanction. It is conceded by learned counsel for the commission that this court has so held in the recent case of *Perry* v. *Industrial Acc. Com.*, 180 Cal. 497, [181 Pac. 788], decided June 5, 1919, but he asks for a reconsideration of the

questions involved.   It had previously been held many times
that a substantially similar provision in the Workmen's
Compensation Act of 1913 (section 30, page 294), was in-
valid, in that the constitutional provision relative to the
enactment of workmen's compensation laws (sec. 21, art.
XX) did not contemplate a law authorizing an award of
compensation by the Industrial Accident Commission against
some other person than the employer (*Carstens* v. *Pillsbury*,
172 Cal. 572, [158 Pac. 218]; *Sturdivant* v. *Pillsbury*, 172
Cal. 581, [158 Pac. 222]; *Western Indemnity Co.* v. *Indus-
trial Acc. Com.,* 172 Cal. 766, [158 Pac. 1033]; *First Chris-
tian Church* v. *Industrial Acc. Com.,* 173 Cal. 552, [160 Pac.
675].)   The later case of *Perry* v. *Industrial Acc. Com.,
supra,* involved the question whether the change in phrase-
ology of the section of the Workmen's Compensation Act
(old section 30; now section 25) made in the act of 1917,
overcame the constitutional objection, and it was held that
it did not "for the reason that the terms 'employers,' 'em-
ployees,' and 'employment' as used in section 21, article XX,
of the constitution, as amended in October, 1911, must be
construed in the light of their meaning at the time of the
adoption of the amendment and cannot be extended by legis-
lative definition, for such extension would, in effect, be an
amendment of the constitution, if accepted as authoritative."
(See, also, *Flickenger* v. *Industrial Acc. Com., ante,* p. 425,
[184 Pac. 851].)   [5]   We can see no reason to doubt the cor-
rectness of this conclusion.   The cause further involved, as does
this case, the question whether the legislative power in this re-
gard had been enlarged in this respect by the addition of
section 17½, article XX, to the constitution, by an amend-
ment adopted November 3, 1914, and it was held that the
new provision had no such effect.   The matter was then
thoroughly considered, and we see no reason to doubt the
correctness of the conclusion reached.   Attention is also
called by learned counsel for respondent to an amendment
of section 21, article XX, of the constitution, adopted in
November, 1918, some months subsequent to the happening
of the accident here involved.   [6]   The inapplicability of this
amendment to any question involved in the case at bar is
fully shown by what is said in discussing the amendment in
*Perry* v. *Industrial Acc. Com., supra,* and we reaffirm what
was thus said.   It follows from the foregoing that the award

against the Employers' Liability Assurance Company has no proper support in the record.

In so far as the award of the commission runs against The Employers' Liability Assurance Corporation, it is annulled. In all other respects said award is affirmed.

Shaw, J., Melvin, J., Wilbur, J., Lennon, J., Lawlor, J., and Olney, J., concurred.