[Civ. No. 13086. Second Dist., Div. One. Feb. 11, 1942.]

GEORGE Y. HAMMOND, Respondent, v. VERNON Mc-
DONALD et al., Appellants.

Hanna & Morton for Appellants.

Newby & Newby for Respondent.

SHAW, J. pro tem.—This is an action brought by the plaintiff as a citizen and resident of the county of Los Angeles, to abate a nuisance consisting of a place in said county used by the defendants, it is alleged, for the unlawful sale and service of intoxicating liquor. The action purports to be brought under a statute of 1915 (Stats. 1915, p. 236; Deering's General Laws, 1937 ed., Act 3778), which in terms authorizes such an action to be brought by any citizen of the county where the nuisance exists. On a former appeal in this action it was held that the statute just referred to was not repealed by the adoption in 1932 or the later amendment in 1934 of section 22, article XX of the Constitution regulating the sale of intoxicants or by the Alcoholic Beverage Control Act (Stats. 1935, p. 1123; Deering's General Laws, 1937 ed., Act 3796) or by subsequent amendments of that act, but

is still in full force and effect and authorizes the bringing of this action by the plaintiff. (*Hammond* v. *McDonald* (1939), 32 Cal. App. (2d) 187 [89 Pac. (2d) 407].) After that decision the case was tried, findings in favor of plaintiff were made, and judgment of abatement of the nuisance was entered thereon, from which defendants appeal.

The record shows that the place in question is, to some extent, at least, operated by the defendants as a café and lunch counter; and for convenience we will use, in referring to this part of their activities, the term "restaurant," which appears before "café" in the constitutional provision hereinafter construed and is synonymous therewith in ordinary use. This action is brought by the plaintiff to obtain a determination of the question, to what extent, if at all, may intoxicating liquors be sold without meals, in restaurants and other public eating places licensed to make sales of such liquors for consumption on the premises.

The controlling rule on this subject is established by section 22 of article XX of the Constitution of this state, as amended in 1934, which, after vesting in the state the exclusive power to regulate dealings with intoxicating liquors, further provides: "Intoxicating liquors, other than beers, shall not be consumed, bought, sold, or otherwise disposed of for consumption on the premises, in any public saloon, public bar or public barroom within the State; *provided, however,* that subject to the aforesaid restriction, all intoxicating liquors may be kept and may be bought, sold, served, consumed, and otherwise disposed of in any bona fide hotel, restaurant, café, cafeteria, railroad dining or club car, passenger ship, or other public eating place, or in any bona fide club after such club has been lawfully operated for not less than one year." Then follow provisions giving the State Board of Equalization "the exclusive power to license" all liquor business, subject to legislative control to an extent not now in question. By reason of the exception of "beers" in the first part of the language quoted, our problem does not affect the sale of beers, and references hereinafter made to intoxicating liquors do not include beers in that term, unless it is so stated. So also, the facts here raise no question in regard to clubs, and we do not undertake to construe the provisions relating to them.

For the purpose of enforcing and applying this constitutional provision, the legislature in 1935 passed the Alcoholic

Beverage Control Act above mentioned, which, as amended in 1937 (Stats. 1937, p. 2169) provides in section 53: "Every person who sells, serves or otherwise disposes of any alcoholic beverage, except beer which may be so sold, served or disposed of, over or at any public bar or in any public barroom, for consumption on the premises, shall be guilty of a misdemeanor." A definition of the terms used in this section is supplied by subdivision (m) of section 2 of the same act as amended in 1937 (Stats. 1937, p. 2129), which, with its introductory clause, reads as follows:

"Sec. 2. The following words, terms and phrases when used in this act have the meanings ascribed to them in this section, except where the context clearly indicates a different meaning: . . .

"(m) Public bar, or 'public saloon' or 'public barroom' is hereby expressly prohibited and means any room to which the public has access in which there is any bar, counter or other structure over which beverages of an alcoholic content in excess of four per cent by weight are sold or served by the drink to the public for consumption on the premises; provided, however, that counters or other structures used for the sale, service and consumption of meals, and not as a subterfuge for a public bar, shall not be deemed to be a public bar within the meaning of this act."

The same statute provides for the issuance of what it denominates "on-sale" licenses to sell beer and wine and to sell distilled spirits (sec. 5, items 20, 21, 22 and 23; Stats. 1937, p. 2131); and these licenses authorize sales "for consumption on the premises where sold." (Sec. 6, subd. (j); Stats. 1937, p. 2134.) Such "on-sale" licenses may be issued only for the places designated in the proviso above quoted from the constitutional provision. (Sec. 18, same act; Stats. 1935, p. 1131.) The defendants had licenses under these provisions at the time to which this action relates.

■ Before approaching a decision of the main question, it seems advisable to clear away some of the surrounding underbrush growing from subordinate or incidental contentions of the parties. Thus, plaintiff contends that the question now raised was answered by the decision of this court on the former appeal and that such decision has become the "law of the case" and cannot be questioned on this appeal. That contention is based on the words we now emphasize in the

following passage from the opinion on the former appeal: "A reading of the constitutional amendment and the Alcoholic Beverage Control Act, especially sections 1 and 53 thereof, indicates that it was the intention of the people, as well as of the legislature, to prevent the return of the public saloon or barroom to the social life of California after the repeal of the Eighteenth Amendment to the federal Constitution. It was apparently with that idea in mind that the amendment was adopted and the statute enacted prohibiting the disposal of intoxicating liquors, other than beer, for consumption by the general public upon the premises, *except when served with meals.* The 1915 statute is entirely consistent with such viewpoint, and was obviously continued in effect in order to give a supplemental or additional remedy by which the sale of intoxicating liquor to the general public in a public saloon or barroom could be restrained through a civil suit in equity." (Italics added.) (*Hammond* v. *McDonald, supra* (1939), 32 Cal. App. (2d) 187 at 194.) This, however, was obviously not intended as a ruling on the construction of the Constitution. That matter was not then under consideration. The question before the court arose on a demurrer to the complaint, and a request for leave to file an amended complaint. Neither of these complaints contained allegations adequate to raise on demurrer the question now under consideration, and the point decided, as stated by the court, was simply that ". . . the statute of 1915 is still in full force and effect and has never been repealed or superseded." Before making the statement relied on by plaintiff the court had referred to the 1932 version of the constitutional provision and to the State Liquor Control Act adopted in pursuance thereof, both of which did expressly prohibit disposal of intoxicating liquor for consumption on the premises except with meals, and the form of the statement may have been influenced by that fact. At any rate, the statement relied on is a mere passing remark, and if it can be said to lay down any legal rule at all, it is at best *obiter dictum.* It is therefore not binding on us as the law of the case (*Millsap* v. *Balfour* (1910), 158 Cal. 711, 714 [112 Pac. 450], and cases there cited; *Mulford* v. *Estudillo* (1867), 32 Cal. 131, 138), and does not bar us from now deciding the question on its merits.

It is urged by defendants that there have been legislative

and administrative constructions of the constitutional provision above mentioned in accordance with their contentions. In support of their claim of a legislative construction, they call attention to provisions of the Alcoholic Beverage Control Act which we have already mentioned (secs. 5, 6 and 18, *supra*), relating to licenses, and characterize them as "providing that a bona fide restaurant, hotel, etc., might serve intoxicating liquors without meals." This characterization is not borne out by a reading of the provisions mentioned. Their language goes no further than to authorize the sale of alcoholic beverages "for consumption on the premises where sold," without mention of meals; those sections authorize service of liquor without meals, if at all, only by not prohibiting it. This leaves the question open for determination upon such other provisions of Constitution or statute as may be found applicable. Far from putting a construction on the Constitution, it evades such construction. Reference is also made to subd. (m) of section 2, as amended in 1937, which is above quoted, and to the 1935 form of the same provision, which did not differ materially from that of 1937 as far as the present matter is concerned. These provisions say nothing of the service of meals with liquor, and are no more interpretive of the Constitution in that respect than are the other provisions just discussed.

On the claim of administrative construction it is argued that "the State Board of Equalization has uniformly construed the amendment of 1934 as authorizing the serving of all types of intoxicating liquors without meals in restaurants and hotel dining rooms and has consistently issued many thousands of licenses in the state of California for such purpose," and that we may take judicial notice of this fact. The issuance of licenses since 1935 must have been done under the statutory provisions already referred to, and their purpose could be no other than that stated in the statute, which, as we have already said, declares nothing regarding the question here in issue. What other acts the board may have done by way of construing the Constitution are not disclosed either in the record or in the briefs. If there be anything to which our judicial notice could extend, either under section 1875, subdivision 3 of the Code of Civil Procedure or otherwise, our attention should be called to it. We are not required to institute an independent investigation on the subject. In this connection we note that such administrative construction of the

Constitution may be considered only when there is uncertainty in the provision to be construed. (*Carter* v. *Commission on Qualifications* (1939), 14 Cal. (2d) 179, 185 [93 Pac. (2d) 140].) Where the meaning is not doubtful, administrative acts or regulations in conflict with it are simply void. (*Hodge* v. *McCall* (1921), 185 Cal. 330, 334 [197 Pac. 86]; *Morris Plan Co.* v. *Johnson* (1940), 37 Cal. App. (2d) 621, 624 [100 Pac. (2d) 493]; see, also, 16 C. J. S. 71; *People* v. *Ford Motor Co.* (1922), 188 Cal. 8, 10 [204 Pac. 217].)

The record does disclose that representatives of the State Board of Equalization inspected defendants' place of business from time to time, and in doing so paid particular attention to their facilities for serving food and the amount of food on hand. This shows a desire to ascertain whether defendants were conducting a bona fide restaurant for which an "on-sale" license could be properly issued, but indicates no opinion on the question whether meals must be served with drinks.

Plaintiff argues that the proviso in the above quoted constitutional provision is repugnant to the body of the provision to which it is attached and is therefore void; while defendants argue that the proper function of a proviso is to limit the general language of an enactment and that the proviso here may be held to have that effect and is valid. Defendants also argue that if there is any inconsistency between the proviso and the provision preceding it, the proviso must control for several reasons; first, that in such case a special provision prevails over one of general character; second, that the provision which is last in point of arrangement prevails; and third, that the provision which is later in point of time—claimed to be the proviso—controls. Careful consideration of the constitutional language discloses that it affords no foundation for any of these arguments, and hence the questions presented under them need not be resolved here. We repeat here that constitutional language, emphasizing the part of it which disposes of the questions above mentioned: "Intoxicating liquors, other than beers, shall not be consumed, bought, sold, or otherwise disposed of for consumption on the premises, in any public saloon, public bar or public barroom within the State; *provided, however, that subject to the aforesaid restriction,* all intoxicating liquors may be kept and may be bought, sold, served, consumed, and otherwise disposed of in any bona fide hotel, restaurant, café, cafeteria, railroad

dining or club car, passenger ship, or other public eating place, or in any bona fide club after such club has been lawfully operated for not less than one year." (Italics added.) The framers of this provision must have had in mind the questions above suggested, and to set them all at rest, they caused the Constitution to provide its own rule of construction in these respects. It declares that the authority given by the proviso for the sale of intoxicating liquors in bona fide hotels, restaurants, etc., is "subject to the aforesaid restriction." The only restriction previously stated, and hence the only restriction to which this language can refer, is the provision that intoxicating liquors shall not be consumed, sold, etc., "in any public saloon, public bar or public barroom." The conclusion is inescapable that the proviso is not inconsistent with and does not abrogate the prohibition immediately preceding it, although the terms of the proviso may, as hereinafter indicated, affect the construction of that prohibition.

This brings us to the principal question above stated, the answer to which must be found in the constitutional provision just quoted. In ascertaining the meaning of this constitutional provision, its history, to which defendants point, must be given due consideration. The section 22 of article XX which we have before us (another section of the same number, covering a different subject, was adopted in 1934) was first placed in the Constitution in 1932, and as then adopted the provisions now to be construed differed from their present form in several respects. Following substantially the same provision as now exists giving the state the exclusive power to regulate dealings with intoxicating liquors there were two provisos which read as follows: "*provided, however,* no public saloon, public bar or barroom or other public drinking place where intoxicating liquors to be used for any purpose shall be kept, bought, sold, consumed or otherwise disposed of, shall ever be established, maintained or operated within the State; *provided, further,* subject to the above provisions, that in hotels, boarding houses, restaurants, cafés, cafeterias and other public eating places, wines and beer may be served and consumed with meals furnished in good faith to the guests and patrons thereof."

While the first proviso just quoted from the original section is different in form from the provision—not worded as a proviso—which takes its place in the amended section, the

two enactments are substantially the same in effect insofar as they prohibit the sale and the consumption of intoxicating liquors in any public saloon, public bar or public barroom. But the second proviso of the original section was substantially revised and altered by the amendment, and this is a fact of considerable significance here. ■ A substantial change in the language of a statute by an amendment indicates an intention to change its meaning. (*Meyerfeld* v. *South San Joaquin Irr. Dist.* (1935), 3 Cal. (2d) 409, 417 [45 Pac. (2d) 321]; *Thomas* v. *Driscoll* (1940), 42 Cal. App. (2d) 23, 28 [108 Pac. (2d) 43]; *Hoffman* v. *McNamara* (1929), 102 Cal. App. 280, 285 [282 Pac. 990]; *McCarthy* v. *Board of Fire Commrs.* (1918), 37 Cal. App. 495, 497 [174 Pac. 402].) This rule has been specifically held applicable to the interpretation of constitutional provisions (*Hyatt* v. *Allen* (1880), 54 Cal. 353, 356), and "Generally speaking, principles of construction applicable to statutes are also applicable to constitutions" (16 C. J. S. 51; see, also, *People* v. *Denault* (1927), 81 Cal. App. 1, 9 [253 Pac. 151]; *Hyatt* v. *Allen, supra*). An omission may be as significant as an insertion or a substitution. (*Oakland Pav. Co.* v. *Whittell Realty Co.* (1921), 185 Cal. 113, 120 [195 Pac. 1058].) But a mere change in phraseology, incident to a revision of Constitution or statute, does not result in a change of meaning unless the intent to make such a change clearly appears. (*Hyatt* v. *Allen, supra; Pacific G. & E. Co.* v. *Industrial Acc. Comm.* (1932), 124 Cal. App. 303, 309 [12 Pac. (2d) 649].)

■ Applying these rules to the portions of section 22, article XX of the Constitution, as amended in 1934, which are now under consideration, it is plain that we have something more than a mere change of phraseology resulting from a revision; there is clearly evident an intention to make changes in the meaning. Thus, the second proviso, as adopted in 1932, limited itself to "wines and beer"; in 1934 the authorization given by the corresponding proviso was extended to "all intoxicating liquors." At first, the authorization was only that "wines and beer may be served and consumed with meals furnished in good faith to the guests and patrons"; now those words have been omitted and the authorization is that "all intoxicating liquors may be kept and may be bought, sold, served, consumed, and otherwise disposed of in any bona fide hotel, restaurant" et cetera, with no reference at all to

meals. The amendment also eliminated from what was the first proviso the words "other public drinking place." There can be no doubt that, as a result of these changes, the authorization previously given for the sale of wines and beer has been extended to all intoxicating liquors. This we understand plaintiff to concede; but he contends that these changes have no effect at all on the requirement that meals be served with intoxicating liquors, because of the declaration that the remaining proviso is subject to the prohibition against saloons, barrooms and bars, arguing further, in this respect, that whenever intoxicating liquor is served in a restaurant and is consumed on the premises, without a meal, such restaurant *ipso facto* becomes, at least for the time being, a public saloon or barroom. Defendants' argument goes to the opposite extreme, their claim being that the right of the keeper of a bona fide restaurant to sell liquor without meals for consumption on the premises is unlimited as to quantity, that no matter how much liquor is so sold or how great a proportion of his total business such sales may be, his place of business remains a bona fide restaurant and his sales are in such a restaurant and not in a public saloon, bar or barroom.

We think the true rule lies somewhere between these contentions. There is in the changes made by the amendment a strong indication of an intent to free restaurant keepers and others from the limitation that their sales must be with meals. Not only were the words "with meals" stricken from the permissive provision, but the restriction regarding "other public drinking place" was eliminated from the prohibitory clause. The last quoted words were those upon which the Supreme Court relied, in *Sandelin* v. *Collins* (1934), 1 Cal. (2d) 147, 154 [33 Pac. (2d) 1009, 93 A. L. R. 956], to support its holding that the constitutional provision, as first adopted in 1932, prohibited the consumption of intoxicating liquor in hotels, restaurants, et cetera, otherwise than with meals. This decision was made a little more than four months before the election at which the 1934 amendment was adopted, and the framers of that amendment no doubt gave it consideration. If any uncertainty exists in this respect, the argument officially circulated to the voters in support of the amendment, when it was adopted by them, may be examined and considered for the purpose of aiding in the construction of the amendment. (*People* v. *Ottey* (1936), 5 Cal. (2d) 714, 723

[56 Pac. (2d) 193]; *Beneficial Loan Society, Ltd.* v. *Haight* (1932), 215 Cal. 506, 515 [11 Pac. (2d) 857].) Looking at that argument we find it emphasizing the proposition that under the amendment liquor may be served by the drink with or without meals, in restaurants et cetera.

It is a settled rule of constitutional construction that, "If there are apparent conflicts, it is the duty of courts to harmonize them, if this can be reasonably done without distorting the meaning of any provision, so as to give effect to every portion of the instrument. Each provision must be read with direct reference to every other which relates to the same subject, and so read, if possible as to avoid repugnancy." (5 Cal. Jur. 583; see, also, *Webster* v. *Board of Regents* (1912), 163 Cal. 705, 709 [126 Pac. 974]; *Wheeler* v. *Herbert* (1907), 152 Cal. 224, 236 [92 Pac. 353]; *Crowe* v. *Boyle* (1920), 184 Cal. 117, 129 [193 Pac. 111].) "The legal intendment is that each and every clause has been inserted for some useful purpose, and when rightly understood may have some practical operation." (5 Cal. Jur. 586.) This rule must be applied in connection with the other rule requiring effect to be given to substantial changes in language, including omissions, made by an amendment, so that in determining the effect of several provisions and their interaction upon each other as they now stand, we must consider changes made in them by amendment as well as their present form, and give effect to all of these matters so far as it is possible to do so.

We have here two provisions for consideration: first, that prohibiting sale, consumption, etc., of intoxicating liquors "in any public saloon, public bar, or public barroom"; and second, the proviso thereto attached, that "subject to" this prohibition, all such liquors may be sold, consumed, etc., "in any bona fide hotel, restaurant," etc. Under the rule just stated we must find, if possible, some construction which will give effect to both of these provisions; we cannot conclude that the words declaring the proviso subject to the prohibition were intended to nullify the proviso entirely or shut our eyes to the changes made by the amendment. Giving consideration to all these matters, we conclude that the Constitution, as it now stands, intends to permit the sale of intoxicating liquors without meals, for consumption on the premises, to some extent and in some places. The plaintiff's construction

to the contrary entirely ignores the significant changes of omission made in the Constitution by the amendment.

On the other hand, this permission given by the Constitution is expressly made subject to the prohibition of sales, consumption, et cetera, in any public saloon, bar or barroom. Some effect must be found for this restriction also. In this connection we note that while the provision requiring meals to be served in good faith with intoxicating liquors consumed on the premises has been eliminated from the Constitution, the idea of good faith has been retained, and the words "bona fide" have been inserted, where they did not formerly appear, at the head of the list of places in which sales for consumption on the premises are permitted. In other words, such sales are not permitted in every restaurant, but only in those which are "bona fide." Such bona fide restaurants are to be contrasted with the public saloons, bars and barrooms mentioned in the prohibition. To harmonize and effectuate all of these provisions we must hold that there are or may be bona fide restaurants in which intoxicating liquors are served and consumed without meals, and which are not saloons, bars or barrooms; but that there are or may be other restaurants in which such liquors are so sold and consumed, which are not to be regarded as bona fide restaurants, but, in the view of the Constitution, merely as saloons, bars or barrooms. Such a conclusion may be reached without doing violence to the language of the Constitution. No definitions of the terms used appear in the Constitution. ▪ In the absence of such definitions, the words, having no technical meaning, will be taken in the ordinary and generally accepted sense. (*Kaiser v. Hopkins* (1936), 6 Cal. (2d) 537, 539 [58 Pac. (2d) 1278]; *San Pedro etc. R. R. Co.* v. *Hamilton* (1911), 161 Cal. 610, 617 [119 Pac. 1073, 37 L. R. A. (N. S.) 686].) The words "saloon" and "barroom," as used in connection with the sale of intoxicating liquor, import a place where such liquors are sold for consumption on the premises( 7 C. J. 930; 9 C. J. S. 1550; 55 C. J. 1345; see, also, Words & Phrases, Permanent ed., under these words); to which Webster's New International Dictionary, 2d ed., first published in 1934, adds, in case of a saloon, that such sales are "commonly without meals." A restaurant is "a public eating house" (Webster's Dict. above cited), and it is evidently so regarded in the constitu-

tional provision under consideration, for the enumeration including it is there followed by the words, "or other public eating place." ▆ It is a matter of common knowledge of which we may take judicial notice, that the saloons and barrooms existing before the enactment of prohibition, which undoubtedly it was the intent of this constitutional amendment to prohibit, were not devoted to the furnishing of meals. They did, in some cases, furnish "free lunches," usually of rather minor character; but the business for which they were established was the selling of intoxicating liquor for consumption on the premises, and any furnishing of food or meals was purely incidental to that business. Persons whose main object was the obtaining of meals, even if they desired drinks of intoxicants with them, went to restaurants and cafés, whose principal business was the serving of meals, not of intoxicants. ▆ The Constitution, by its use of the words "bona fide" to modify the words designating the places where intoxicating liquors may be sold and consumed on the premises, has drawn a similar distinction. As the court said in *Webster* v. *Denison* (1853), 25 Vt. 493, 498, "The proper distinction in the law, between *bona fides* and *mala fides*, is, that the former requires the thing to be, in fact, just what it purports to be." Such is also the common meaning of the words "bona fide." (See Webster's Dictionary, already cited.) A restaurant which is kept and operated for the purpose of furnishing meals to the public, the service of intoxicating liquors therein being merely incidental to that business, is what it purports to be, and is therefore a bona fide restaurant, and may as a casual and incidental part of its business sell such liquors and allow their consumption upon the premises even without meals. But where the principal business of the restaurant becomes the sale and service of intoxicating liquors, which are consumed on the premises, with the sale and service of meals the incidental matter, or "side-line," such place is no longer a bona fide restaurant, but is to be regarded as a public saloon or barroom, within the intent of the constitutional provision, and the sales of such liquor therein are prohibited. Any rule more liberal to the restaurant keeper would, in effect, wipe out the prohibition of saloons, et cetera, and give the proviso complete dominance over the "restriction" to which, by its own terms, it is subject.

▆ The legislature has undertaken to define some of the

words used in the Constitution and now under consideration. Such a definition, while not controlling if plainly opposed to the meaning of the Constitution (*Worswick Street Pav. Co.* v. *Industrial Acc. Comm.* (1919), 181 Cal. 550, 561 [185 Pac. 953]), must be followed where the Legislature adopts one of two reasonable and possible constructions of the constitutional provision. (*Kaiser* v. *Hopkins* (1936), 6 Cal. (2d) 537, 540 [58 Pac. (2d) 1278]; *Pacific Indemnity Co.* v. *Industrial Acc. Comm.* (1932), 215 Cal. 461, 464 [11 Pac. (2d) 1, 82 A. L. R. 1170]. ██ This legislative definition is in subdivision (m) of section 2 of the Alcoholic Beverage Control Act, which now stands as amended in 1937, and has already been quoted. This definition departs from the Constitution in one respect. By its terms a room is not a saloon unless it contains a "bar" or counter. There is nothing in the usual or common meaning of the word "saloon" which requires the presence of a counter to constitute a "saloon," nor do we see any possibility of a double meaning of the Constitution in this respect. Hence, the definition places an unwarranted limitation on the constitutional provision, and, if intended as a definition of this term as used in that provision, it is to that extent ineffective.

██ Upon the construction we have given the constitutional provision, the question whether any given place is a bona fide restaurant, or is so operated as to be a public saloon, bar, or barroom, is one of fact. On that question the trial court, in this case, made findings which include the following: "... at the commencement of this action, and at all times thereafter, down to and including the time of the trial of this action, said defendants and each of them have been conducting in good faith, in a brick building on the premises above described, a cafe and lunch counter business; that said defendants have also, during said period in said building on said premises, engaged in the business of serving to the public intoxicating liquors" (Finding III); "Drinks, both soft and alcoholic and in excess of four per cent by weight, with and without meals, are served both over said counters and in said ballroom and dining room" (Finding III); "... the business conducted by said defendants upon said premises by the sale of intoxicating liquors (other than beers) containing alcohol in excess of four per cent, by weight, without meals, is illegal, and, in effect, amounts to the maintenance therein of a saloon and barroom, contrary to law." (Finding IV.) Between the

findings quoted are statements of a number of facts of an evidentiary nature, but the findings quoted are not declared to be conclusions from these other facts. Upon our view of the Constitution, these findings, declaring, in effect, that the defendants are conducting a bona fide restaurant or cafe and that by their method of conducting it they are at the same time and place maintaining a public saloon and barroom, are irreconcilably inconsistent. For that reason the judgment must be reversed. (*Hollywood Cl. & Pr. Co.* v. *Hollywood Laundry Service* (1932), 217 Cal. 131, 137 [17 Pac. (2d) 712].)

Because of the limited nature of the provisions of section 2, subdivision (m) and section 53 of the Alcoholic Beverage Control Act, both already quoted, it may be that, even if defendants are not conducting a bona fide restaurant, some of the sales of intoxicating liquor made by them without meals, particularly those in the ballroom, where there appears to be no counter, are not in violation of that act, but they are not for that reason excluded from the operation of the act of 1915 by which this action is sanctioned. By the terms of section 1 of the act last mentioned a place ''used for the purpose of unlawfully selling, serving or giving away any spirituous, vinous, malt or other alcoholic liquor'' is a nuisance which may be abated by proceedings under the act. The sales here, even if they do not violate any legislative enactment, are, if defendants' restaurant is not bona fide, in direct contravention of the constitutional provision. That provision directly prohibits certain acts, and no legislation is needed to put this prohibition in force and thus outlaw the prohibited acts. Of course, it would be possible and even desirable for the legislature to provide further sanctions, but without such sanctions an act directly prohibited by the Constitution is unlawful. (*Sheehy* v. *Shinn* (1894), 103 Cal. 325, 329 [37 Pac. 393]; *Garms* v. *Jensen* (1894), 103 Cal. 374 [37 Pac. 337]; 13 C. J. 424; 17 C. J. S. 560.)

The judgment is reversed, and the case is remanded for a new trial.

York, P. J., concurred.

WHITE, J., Concurring and Dissenting.—I concur in that portion of the judgment which reverses the judgment of the court below, but I dissent from that portion which remands

the cause for a new trial. I am firmly of the opinion that the cause should be remanded with directions to the trial court to enter judgment for the defendants. The reason for such belief upon my part is engendered by the fact that the sole question here involved is whether, under the provisions of section 22 of article XX of the Constitution of this state, as amended in 1934, intoxicating liquors may be sold without meals in bona fide restaurants, cafes, hotels, clubs or other legitimate eating places. The trial court found, upon substantial and convincing evidence, that the defendants were conducting in good faith a cafe and lunch counter business, but nevertheless held that because in such bona fide restaurant defendants were serving intoxicating liquors without meals, their action in so doing was ''illegal, and, in effect, amounts to the maintenance therein of a saloon and barroom, contrary to law.'' The bona fide character of defendants' restaurant is conceded, and the sole and paramount question which we should determine is, therefore, one of law, *viz.*, can this bona fide restaurant serve intoxicating liquors without meals. While it might be inferred from the decision of this court that restaurants of a bona fide character may serve intoxicating liquors without meals, such holding is in my opinion more or less equivocal. I believe we should in this case decisively and unequivocally settle and determine that question of law. I am firmly convinced that under the existing provisions of our Constitution, a bona fide restaurant, etc., may legally and lawfully sell and serve intoxicating liquors either with or without meals. In that connection, let us consider the constitutional provision as adopted in 1932, so far as here pertinent. It read:

''. . . . *provided, however,* no public saloon, public bar or barroom or other public drinking place where intoxicating liquors to be used for any purpose shall be kept, bought, sold, consumed or otherwise disposed of, shall ever be established, maintained or operated within the State; *provided, further,* subject to the above provisions, that in hotels, boarding houses, restaurants, cafes, cafeterias and other public eating places, wines and beer may be served and consumed with meals furnished in good faith to the guests and patrons thereof.''

As amended in 1934, the Constitution, so far as it concerns the question before us, was made to read: ''Intoxicating liquors, other than beers, shall not be consumed, bought, sold,

or otherwise disposed of for consumption on the premises, in any public saloon, public bar or public barroom within the State; provided, however, that subject to the aforesaid restriction, all intoxicating liquors may be kept and may be bought, sold, served, consumed, and otherwise disposed of in any bona fide hotel, restaurant, cafe, cafeteria, railroad dining or club car, passenger ship, or other public eating place, or in any bona fide club after such club has been lawfully operated for not less than one year."

It seems clear to me that by adopting the 1934 amendment the people intended to and did make a substantial change in the organic law. Under the 1932 constitutional provision only the sale of beer and wine for consumption on the premises was permitted, and then only when such service was made with meals, while the sale of so-called hard liquor by the drink was prohibited whether with or without meals in any public restaurant. If there be any doubt as to what was in the minds of the framers of the initiative amendment of 1934, or in the minds of the people when they voted to adopt such amendment, that doubt is dissipated by reason of the argument addressed to the electors of California as contained in the pamphlet compiled by the state legislative counsel and distributed to each qualified voter by the Secretary of State. In the argument favoring adoption of the 1934 initiative amendment, we find the following clear and unequivocal language:

". . . The issue is clear-cut. The sale of beer and wine, with or without meals, and of hard liquor by the drink, with or without meals, must stop in California after November 6th unless the people approve Proposition 2 at the polls. *In voting for this proposition the people will vote for the open and regulated sale of all intoxicating liquors, with or without meals, in* legitimate eating places so licensed by the State Board of Equalization."

That the opponents of the initiative measure suffered no illusions as to the intent and purpose of the amendment is evidenced by the following quotation from the argument made against the adoption of such amendment, and which argument, by the way, was signed by one of counsel for respondent herein: "It (referring to the amendment) provides that intoxicating liquors 'other than beers' shall not be consumed, bought, sold or otherwise disposed of for consumption on the premises in any public saloon, public bar, or public barroom

within the state; but that subject to this restriction, '*all intoxicating liquors* may be kept and may be bought, sold and served, consumed and otherwise disposed of in any bona fide hotel, restaurant, cafe, cafeteria, railroad dining or club car, passenger ship or other public eating place, or in any bona fide club after such club has been lawfully operated for not less than one year.' . . . The places in which all intoxicating liquors may be freely sold and consumed if the proposed amendment is adopted, *are so varied, diversified and numerous that it would amount to no restriction worthy of the name* and could only have been designed to fool the public, as the liquor forces have been prone to do at all times and under all circumstances.''

With the foregoing arguments before them, the people wrote the initiative measure into the Constitution. The language of the amendment to me seems clear and understandable. After outlawing a return of the public saloon, it provides, subject to the just - mentioned restriction, that all intoxicating liquors may be kept, bought, sold, served, consumed and otherwise disposed of in any *bona fide hotel, restaurant,* etc. In other words, the service of meals with liquor is not required when such service takes place in a licensed bona fide hotel, restaurant, club, cafe, etc. The requirement of meal service with the sale of beer or wine contained in the former constitutional provision of 1932 was completely eliminated by the 1934 amendment and the sale of such malt and vinous as well as distilled liquors was authorized without any reference to meal service, provided the restaurant, cafe, etc., was in good faith conducted as a restaurant, cafe, etc.

Pursuant to the power granted by the Constitution, and to carry out its inhibition against the return of the old-time saloon or barroom, the legislature, in the Alcoholic Beverage Control Act referred to in the main opinion, expressly prohibited the operation of a public bar, public saloon, or public barroom, and defined the latter to be ''any room to which the public has access in which there is any bar, counter or other structure over which beverages of an alcoholic content in excess of four per cent by weight are sold or served by the drink to the public for consumption on the premises; provided, however, that counters or other structures used for the sale, service and consumption of meals, and not as a subterfuge for a public bar, shall not be deemed to be a public bar within the meaning of this act.''

That by the 1934 amendment a substantial change was made in the Constitution to me seems clear and undeniable. That this indicates a clear intention to change its meaning is conceded by the main opinion, with cases cited in support of such concession. As admitted in the main opinion, the indicated change was to free restaurant keepers and others from the limitation that the sale of liquor must be accompanied by the service of meals. The main opinion decides that the Constitution in its present form prohibits the sale of intoxicating liquors for consumption on the premises in all places where that is the *principal business,* but permits it in hotels, restaurants, etc., where the *principal business* is the service of meals and the sale of intoxicating liquor is merely incidental thereto. The main opinion attempts to read into the Constitution the term "principal business," and thus add to the functions of the Board of Equalization the duty of determining what the "principal business" is. To my mind, this is not at all what is contemplated by the Constitution. A mere reading of its terms demonstrates clearly and unerringly that once the *bona fide character* of the hotel, restaurant, cafe, etc., as such, is determined, then the sale of liquor, either with or without meals, is permitted in licensed places. The trial court took the position, and the main opinion approves thereof, that because the amount realized from the sales of liquor exceeds that obtained from the sale of meals, the place becomes a public saloon or barroom and loses the characteristics of a bona fide restaurant, cafe, hotel, etc. This to my mind is not the true test. I feel that if the place in question, exclusive of the sale of liquor, could qualify as a bona fide restaurant, cafe, etc., as these terms are commonly known and understood—that is to say, is prepared to furnish meals and foodstuffs in the event such service is requested by the patron—then such establishment, if licensed by the Board of Equalization, may maintain upon its premises and sell intoxicating liquor, with or without meals.

It is true that the 1934 amendment prohibits public saloons and barrooms. But by its very language it provides that a bona fide restaurant, cafe, etc., is not a saloon. And this is but common sense. The voters of this state, when they adopted the 1934 initiative amendment, knew and understood what the old-time saloon was. They knew it never afforded an opportunity to order and consume a meal therein. It takes no skilled or learned lexicographer to understand that an

establishment equipped to serve bona fide meals cannot be labeled as a saloon, because in the latter only liquor is sold, with possibly an occasional distribution of "free lunch."

In the face of the findings made by the trial court that defendants were operating a bona fide eating place, fully equipped with facilities and foodstuffs for the service of meals, it does not seem to me that there remains anything for the trial court to do but enter a judgment for the defendants, because as heretofore pointed out, the constitutional provision makes but one test for determining whether the Board of Equalization is entitled to license a restaurant, cafe, etc., to serve liquors, with or without meals, and that test is whether such establishment is conducted as a bona fide restaurant, cafe, etc. The evidence supporting as it does the finding of the trial court that the defendants were conducting a bona fide restaurant in compliance with the constitutional provision, their establishment could not be the subject of an abatement action on the ground that it constituted a nuisance, and they are therefore entitled to have a judgment entered in their favor. The decision of this court should so direct.

Appellants' and respondent's petitions for a hearing by the Supreme Court were denied April 6, 1942. Carter, J., voted for a hearing. Traynor, J., did not participate therein.